**In re BP PRODUCTS NORTH AMERICA, INC., Relator.**

No. 07–0119.

Supreme Court of Texas.

Argued Oct. 18, 2007.

Decided Jan. 25, 2008.

Katherine D. Mackillop, Otway B. Denny Jr., Stephen Fernelius, Julie Hardin, Fulbright & Jaworski L.L.P., David M. Gunn, Beck, Redden & Secrest, L.L.P., Kenneth Tekell, Tekell, Book, Matthews & Limmer, L.L.P., Houston, James B. Galbraith, McLeod, Alexander, Powel & Apffel, P.C., Galveston, TX, for Relator.

Brent Wayne Coon, Arturo J. Gonzalez, Brent Coon & Associates, David W. Holman, The Holman Law Firm, P.C., Robert E. Ammons, The Ammons Law Firm, Houston, James D. Nebout, Burwell Burwell & Nebout, LLP, Texas City, TX, for Real Party In Interest.

Lynne Liberato, Haynes and Boone, LLP, Houston, TX, for Amicus Curiae Texas Chemical Council, et al.

Justice GAULTNEY delivered the opinion of the Court.[1]

This mandamus proceeding concerns the enforcement of a discovery agreement governing what is commonly referred to as an "apex" deposition. The discovery agreement was signed by the attorneys for the parties, and filed as provided by Rule 191.1 and Rule 11. We conclude the trial court abused its discretion in failing to enforce the agreement.

## THE TRIAL COURT PROCEEDINGS

Fifteen people died and hundreds suffered injuries in an explosion at relator BP Products North America, Inc.'s Texas City oil refinery. The hundreds of resulting lawsuits against BP Products were consolidated for discovery in the 212th District Court in Galveston County. The parties conducted extensive discovery.

■ The plaintiffs served notices to take the depositions of two executives of relator's parent company, BP p.l.c.: John Manzoni, the head of refining and marketing, and John Browne, the chief executive officer. BP Products moved to quash the depositions and moved for protective orders. BP Products contended the plaintiffs had not met their burden under the apex doctrine.[2] The plaintiffs responded,

1. The Honorable David Gaultney, Justice, Ninth Court of Appeals, Beaumont, sitting by commission of the Honorable Rick Perry, Governor of Texas, pursuant to TEX. GOV'T CODE § 22.005. Justice O'Neill is recused.

2. Under the apex doctrine, when a party seeks to take the deposition of a senior corpo-

alleging that both Manzoni and Browne had unique or superior knowledge of relevant facts. The trial court initially struck BP Products' supporting affidavits as insufficient, and denied the motions. BP Products sought mandamus review, and the court of appeals granted relief requiring consideration of the affidavits. *In re BP Products N. Am., Inc.*, 2006 WL 2192546, at *7, 2006 Tex.App. LEXIS 6898, at *20 (Tex.App.-Houston [1st Dist.] Aug. 4, 2006, orig. proceeding) (mem.op.). The trial court again denied BP Product's motions and allowed the depositions to proceed.

Instead of attempting further mandamus review, BP Products concluded a discovery agreement with the plaintiffs regarding the executives' depositions, and the parties filed the agreement with the trial court. *See* Tex.R. Civ. P. 11, 191.1. The agreement provided that the defendants would produce Manzoni for a four-hour deposition. In return, the plaintiffs promised they would withdraw the notice of deposition of Browne and would not request the deposition of any other executive officer or board member of BP p.l.c., with one exception: paragraph four of the agreement provided that if, during the Manzoni deposition, the plaintiffs developed new evidence that John Browne had "unique and superior personal knowledge" of relevant facts, the plaintiffs would be permitted to issue a new notice of deposition for Browne. The agreement also provided that BP Products retained its right to file a motion to quash and motion for protection "on this new notice," as well as

its right to seek review of the trial court's ruling on these motions. In addition, the agreement provided that "if, following appeals referenced in paragraph 4, the deposition of John Browne is not protected, the deposition of John Browne will be limited to one hour by telephone." [3]

As plaintiffs' counsel explained to the trial court, the agreement was a "quid pro quo" negotiated to avoid delay in obtaining Manzoni's testimony:

> [The agreement] was based on ... a quid pro quo.... Time was of the essence. As the court may recall, we were scheduled for trial in September, and because of BP's prior appeals that delayed the taking of him when I went to London to take him in August. We were concerned we would not be able to get a ruling from the Court of Appeals for the next mandamus allowing us to take it promptly then. So that was our concern and our willingness to restrict Mr. Manzoni for four hours instead of the six or more we may need to do a thorough job. And also to firmly restrict the deposition of Lord Browne to one hour which was unprecedented on our part.

After the agreement was concluded, Browne made numerous public statements regarding the Texas City explosion, including giving interviews to *Fortune* and the *Financial Times,* providing information packets to investors, and hosting several "town hall" meetings for employees, at least one of which plaintiffs contend appeared on the internet.

rate official, the party must show either that the official has "unique or superior personal knowledge" of relevant facts or that "after a good faith effort to obtain the discovery through less intrusive means, (1) that there is a reasonable indication that the official's deposition is calculated to lead to the discovery of admissible evidence, and (2) that the less

intrusive methods of discovery are unsatisfactory, insufficient or inadequate." *In re Alcatel USA, Inc.,* 11 S.W.3d 173, 176 (Tex.2000); *see also Crown Cent. Petroleum Corp. v. Garcia,* 904 S.W.2d 125, 128 (Tex.1995).

3. For the full text of the parties' agreement, see the appendix.

Plaintiffs took Manzoni's deposition and then issued a new notice to take Browne's deposition. Despite the provision of the agreement that any deposition take place "by telephone," the notice provided that the deposition would take place in Galveston, Texas. BP Products filed a motion for protection, complaining that the deposition could not be set in Galveston, that plaintiffs could still not show that Browne had unique or superior knowledge of relevant facts as required under *Crown Central*, 904 S.W.2d at 128, and that Manzoni's deposition had not produced "new evidence" Browne had "unique and superior personal knowledge" of relevant facts as required under the parties' discovery agreement. Plaintiffs responded, asserting they could satisfy both the apex standard and the standard provided in the agreement.

On October 9th, the day of the hearing on BP Products' motion for protection, plaintiffs filed a supplemental response arguing that, at the time the parties entered the agreement, "it was not anticipated" new information demonstrating Browne's knowledge would become available from Browne's public statements. Plaintiffs initially stood by the Rule 11 agreement. At the hearing itself, plaintiffs argued:

> [W]e are abiding by the contract. The contract we're relying is under paragraph four of the Rule 11 agreement.... In fact, we could probably come to this court with a straight face and say we think all bets are off because they misrepresented things. They waited until we entered that agreement and then they put Lord Browne all over the Internet after the fact and then try to King's X us, and we're not even arguing that. So, we will still stick with one hour and we'll still stick with the teleconference....

The trial court ended the first day of the hearing with the statement that it was not convinced "based on how Mr. Browne likes to interject himself, that he doesn't want to be deposed." The trial court continued the hearings until October 11th, to give BP Products an opportunity to examine plaintiffs' new exhibits.

BP Products argued in its written response before the trial court that Browne's public statements did not demonstrate Browne had unique or superior knowledge, and, in any event, did not justify setting aside the parties' discovery agreement. At the October 11th hearing, plaintiffs argued:

> [T]here was fraud inducement in the execution of Rule 11. And we are asking the court to dissolve the Rule 11 agreement and to allow us to proceed with the deposition of Lord Browne. Not just for the one-hour telephonic conference, but for the four to six hours individually we were originally intending to take the deposition.

BP Products responded that plaintiffs had not alleged fraud, had not made allegations attacking the Rule 11 agreement, there was no evidence of fraud, and BP Products was entitled to time "to develop it, discover it, and they have to provide some evidence which they have not."

The trial court denied BP Products' motions, and ordered Browne's deposition to proceed at a place of the parties' choosing, "without limitations and the Rule 11." In its order of October 11, 2006, the trial court found that "new circumstantial evidence developed during Mr. John Manzoni's deposition shows that Mr. Browne has unique or superior knowledge of relevant facts." In addition, the court explained its refusal to enforce the parties' Rule 11 agreement:

> The Court further finds that the parties' Rule 11 Agreement concerning the de-

positions of Mr. Manzoni and Mr. Browne does not prevent the deposition of Mr. Browne going forward because:

(1) After the effective date, Mr. Browne personally injected himself into the case with public comments that present new evidence of his unique or superior knowledge of relevant facts;

(2) The Rule 11 Agreement was based on circumstances that have changed;

(3) BP made misrepresentations that induced Plaintiffs to enter into the rule 11 Agreement;

(4) BP is estopped to rely on the Rule 11 Agreement; and/or

(5) BP's public comments appear to be part of a continuing effort by BP to taint the jury pool.

The Court orders the deposition of Mr. Browne to proceed, without limitations and the Rule 11, at a time and place within the United States to be determined by agreement of the parties, or if in London, with costs/expenses to be paid by the defendants.

Relator filed a petition for writ of mandamus with the court of appeals, and, after the court of appeals denied that petition, relator filed a petition with this Court. We granted a stay of the trial court's order pending our review of the issues.

During the pendency of this mandamus proceeding, Browne resigned from BP p.l.c., and retired. The plaintiffs then filed a motion to dismiss BP Products' petition as moot, contending that apex protections do not apply to retired officials.

## THE MANDAMUS STANDARD

■■■ A writ of mandamus may issue to correct a clear abuse of discretion by a trial court. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). A failure by the trial court to apply the law correctly constitutes an abuse of discretion. *Id.* at 840. The relator must show no adequate remedy by appeal exists. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex.2004). In determining whether appeal is an adequate remedy, appellate courts consider whether the benefits outweigh the detriments of mandamus review. *Id.*

## THE ISSUES

BP Products contends the trial court abused its discretion by setting aside the parties' discovery agreement and ordering Browne's deposition. BP Products argues the plaintiffs have not satisfied their burden under the apex doctrine. In BP Products' view, because Browne does not have unique or superior knowledge of relevant facts, his deposition would be outside the scope of discovery permitted by the rules governing apex depositions. BP Products also asserts the plaintiffs have not made the showing required under the parties' agreement because there is no evidence that Manzoni's deposition produced "new evidence" of Browne's "unique and superior personal knowledge."

## THE RULE 191.1 AGREEMENT

Rule 191.1 provides that "except where specifically prohibited" the parties may modify the "rules pertaining to discovery" by agreement. TEX.R. CIV. P. 191.[4] An agreement is enforceable when it complies with the terms of Rule 11, or as it affects

4. Rule 191.1 reads in full: "Except where specifically prohibited, the procedures and limitations set forth in the rules pertaining to discovery may be modified in any suit by the agreement of the parties or by court order for good cause. An agreement of the parties is enforceable if it complies with Rule 11 or, as it affects an oral deposition, if it is made a part of the record of the deposition."

an oral deposition, if made a part of the record of the deposition. *Id.* The agreement in this case complied with the requirements of Rule 11. *See* Tex.R. Civ. P. 11. The parties do not argue that the agreement was specifically prohibited[5] or that the agreement was outside the scope of Rule 191.1. The question here is whether the trial court had adequate reason to set aside the parties' agreement.

■■ This Court has not previously addressed the scope of a trial court's power to set aside an otherwise enforceable Rule 191.1 agreement. Consistent with its powers over discovery, a trial court may modify discovery procedures and limitations for "good cause." Tex.R. Civ. P. 191.1. This power, however, is not "unbounded." *Id.* cmt. 1. Wherever possible, a trial court should give effect to agreements between the parties. *Johnson v. Swain,* 787 S.W.2d 36, 38 (Tex.1989); *see also Fortis Benefits v. Cantu,* 234 S.W.3d 642, 651 (Tex.2007) (trial court had duty to enforce valid Rule 11 pretrial agreement); *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 91 (Tex.1996) (per curiam) (enforcing a time of filing agreement). Discovery agreements serve an important role in efficient trial management, permitting the parties to settle their disputes without resort to judicial supervision. The Rules of Civil Procedure encourage parties to reach discovery agreements. *See* Tex.R. Civ. P. 191.2. When the parties conclude an agreement, the court should not lightly ignore their bargain.

■ A court should be particularly reluctant to set aside a Rule 191.1 agreement after one party has acted in reliance on the agreed procedure and performed its obligations under the agreement. *Cf. McBride v. McBride,* 797 S.W.2d 689 (Tex. App.-Houston 1990, writ. denied); *SEC v. TheStreet.Com,* 273 F.3d 222, 229–3 (2d Cir.2001) (where a deponent has relied upon a protective order sealing the deponent's testimony, a court should not lightly modify the order). An easy disregard for partially performed agreements would discourage parties from committing to discovery agreements for fear that the other party would avail itself of the benefit of the bargain and then attempt to avoid its own obligations.

The trial court apparently set aside the agreement here based on the court's application of equitable and contract principles. *See In re Ford Motor Co.,* 211 S.W.3d 295 (Tex.2006); *Kennedy v. Hyde,* 682 S.W.2d 525, 529 (Tex.1984) (holding that agreements complying with Rule 11 are nevertheless subject to attack on the grounds of fraud or mistake, and nonconforming agreements "may be enforced for similar equitable reasons"); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). The trial court found that Browne's public statements justified setting aside the discovery agreement on grounds of misrepresentation, estoppel, and changed circumstances. On this record, none of these grounds provides a valid basis for ignoring the parties' agreement.[6]

---

**5.** Paragraph 1 of the agreement provided that the trial court's previous oral ruling regarding the depositions of John Browne and John Manzoni "will be deemed by the parties to be vacated and of no effect." The agreement does not set aside a court order, something specifically prohibited as noted in comment 1 to Rule 191.1. The court's original ruling did not require the plaintiffs to take Browne's deposition, and the parties could agree "to shorten the time permitted for a deposition or to change the manner in which a deposition is conducted." *See* Tex.R. Civ. P. 191.1 cmt 1.

**6.** *See Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 851–52 (Tex.1992) (orig.proceeding) (noting that trial court findings may be helpful in assessing whether or not the trial court abused its discretion).

■ The plaintiffs identify no specific misrepresentations on which they may have relied. Nor does the record contain evidentiary support for the assertion that BP Products made a material, false representation that could have reasonably induced the plaintiffs to enter the discovery agreement. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46–47 (Tex.1998); RESTATEMENT (SECOND) OF CONTRACTS §§ 159 intro. note, 162 (1979). The trial court's explanation, that Browne's public statements established plaintiffs relied on misrepresentations concerning Browne's lack of knowledge, is not supported by the record or the parties' agreement. To the contrary, plaintiffs' statements to the trial court reflect that the plaintiffs entered the agreement to avoid the delays associated with mandamus review and to obtain Manzoni's deposition testimony prior to the September trial setting. Plaintiffs have always maintained Browne has unique and superior knowledge, the trial court previously ruled plaintiffs could take Browne's deposition, and the agreement itself provides that Browne's deposition may be taken for one hour, by telephone, if Manzoni's deposition demonstrated Browne's knowledge.

Similarly, the finding that "BP is estopped to rely on the Rule 11 Agreement" does not support the order. The trial court invoked estoppel apparently to prevent BP Products from taking a position in court concerning the extent of Browne's knowledge that the court viewed as inconsistent with Browne's public statements. *See* RESTATEMENT (SECOND) OF CONTRACTS § 84 cmt. b (1979) (defining waiver); *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex.2000) (defining quasi-estoppel). Even if Browne had unique or superior knowledge, that fact would not estop BP Products from insisting upon the time and manner restrictions included in the agreement; the parties expressly agreed that even if Browne's deposition was "not protected," Browne's deposition would be limited.

■ The record also fails to show that Browne's public statements are the kind of changed circumstance that might amount to "good cause" for setting aside the discovery agreement. Browne's public statements rendered the agreement neither impracticable nor impossible. A subsequent development reducing the usefulness of a discovery agreement to one party, without more, does not justify a refusal to enforce the agreement.

■ The trial court found that "BP's public comments appear to be part of a continuing effort to taint the jury pool," but nothing in the record suggests sanctions were the subject matter of the hearing before the trial court. The hearing focused on the extent of Browne's knowledge as reflected in his public statements. In the trial court, plaintiffs neither explicitly requested sanctions nor cited any supporting rule or case law. Plaintiffs make no argument and cite no authority in their brief to this Court that the order was permissible as a sanction, though in oral argument they referenced other efforts by BP Products that are not part of this record. In the absence of a motion for sanctions, proper notice and opportunity to be heard, or the trial court's invocation of the court's power to sanction, the order striking the discovery agreement is not supportable as a sanctions order. *See In re Bennett*, 960 S.W.2d 35, 40 (Tex.1997) (per curiam); TEX.R. CIV. P. 215.3; *cf. Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583–84 (Tex.2006) (per curiam).

Rule 191.2 provides that "[p]arties and their attorneys are expected to cooperate in discovery and to make any agreements

reasonably necessary for the efficient disposition of the case." TEX.R. CIV. P. 191.2. The Rule also provides that, when requesting a hearing relating to discovery or when filing a discovery motion, a party must certify "that a reasonable effort has been made to resolve the dispute without the necessity of court intervention and the effort failed." *Id.* To achieve "the efficient disposition of the case … without the necessity of court intervention," parties and their attorneys must be able to rely on agreements. *See id.* We hold the trial court abused its discretion by setting aside the parties' Rule 191.1 agreement.

### BP PRODUCTS' MOTION TO QUASH

BP Products asserts that the apex doctrine bars plaintiffs from taking Browne's deposition. Plaintiffs assert the issue is moot because Browne has retired. The apex doctrine, however, does not control the outcome in this case. The discovery agreement displaced the common law standard with the parties' own standard. As BP Products explained in its brief: "If new evidence was developed during Manzoni's deposition showing that Browne had unique and superior knowledge of relevant facts, then Browne would be presented at a limited deposition…. Both parties retained the right to appeal the trial court's ruling on the new evidence issue."

The terms of the parties' discovery agreement apply. The trial court found that "new circumstantial evidence developed during Mr. John Manzoni's deposition shows that Mr. Browne has unique or superior knowledge of relevant facts." If some evidence supports the trial court's conclusion, the trial court could order a deposition consistent with the terms of the parties' agreement. *See generally Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex.2002) (a trial court does not abuse its

discretion if some evidence supports its decision).

To satisfy the "new evidence" provision, plaintiffs rely, in part, on Manzoni's inability to answer certain questions about a twenty-five percent budget cut directive issued by BP p.l.c. The trial court concluded that Manzoni's inability to answer these questions constituted new evidence that Browne would have unique and superior knowledge about the budget cuts. This inference might not normally support the taking of an apex deposition. Here, however, the trial court could reasonably construe the "new evidence" provision of the Rule 191.1 agreement to allow plaintiffs a limited deposition of Browne to answer questions Manzoni may have been unable to answer but Browne could. On this record, under that construction of the parties' agreement, the deposition of John Browne could be taken for one hour, by telephone. The court instead ordered the deposition to proceed without the limitations agreed to by the parties. Though the trial court's "new evidence" finding would support authorizing plaintiffs to take Browne's deposition consistent with the agreed limitations, the finding does not justify setting aside the agreement.

### CONCLUSION

The trial court abused its discretion in setting aside a valid discovery agreement without good cause. In this case, one party had already acted in reliance on the agreed procedure, partially performing its obligations. The parties agreed to define the scope of permissible discovery under Rule 192.3(a), limiting the expense and burden of litigating a disputed issue. Delaying review until appeal, under these circumstances, would defeat not only the purpose of the discovery agreement, but also the strong public policy encouraging parties to resolve their discovery disputes

without court intervention. *See* Tex.R. Civ. P. 191.2. This case presents an issue of first impression, involving an important issue of public policy. We conclude that the benefits outweigh the detriments of mandamus review. *See In re Prudential,* 148 S.W.3d at 136–38.

We conditionally grant the writ of mandamus to compel the trial court to vacate its order, and direct the trial court to enforce the parties' agreement. We are confident the trial court will comply, and our writ will issue only if the court does not.

## APPENDIX

### Text of the Parties' Agreement

The parties agree that, in consideration of all the agreements made herein:

1. The oral ruling of the court on August 28, 2006, regarding the depositions of John Browne and John Manzoni will be deemed by the parties to be vacated and of no effect and no order will be tendered by plaintiffs.

2. BP Products will produce John Manzoni for deposition in Chicago on September 8 for four hours of deposition time.

3. Plaintiffs will withdraw the notice of deposition of John Browne and will not again notice or request the deposition of any other executive officer or board members of BP p.l.c., with one exception set out in paragraph 4 below.

4. If, during the deposition of John Manzoni, new evidence is developed that John Browne has unique and superior personal knowledge of facts relevant to the trial of this matter, Plaintiffs may issue a new notice for the deposition of John Browne. BP Products retains its right to file a motion to quash and motion for protection on this new notice, have that motion heard at the trial court and both

parties retain their right to appeal the trial court's ruling.

5. Plaintiffs agree that if, following appeals referenced in paragraph 4, the deposition of John Browne is not protected, the deposition of John Browne will be limited to one hour by telephone.