COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 

 

NUMBER 13-06-541-CV


IN THE MATTER OF THE GUARDIANSHIP OF

JAVIER DELUNA, A MINOR CHILD


 


On appeal from the Probate Court at Law

of Hidalgo County, Texas.

 


NUMBER 13-06-687-CV


IN RE: COLUMBIA/ST. DAVID'S HEALTHCARE SYSTEM, L.P.

D/B/A SOUTH AUSTIN HOSPITAL

 


On Petition for Writ of Mandamus

 


O P I N I O N


 Before Chief Justice Valdez and Justices Garza and Benavides


Opinion by Justice Garza


 

 Appellant/relator Columbia/St. David's Healthcare System, L.P. d/b/a South Austin
Hospital ("Columbia") brings this direct appeal and parallel petition for writ of mandamus
challenging the probate court's refusal to approve a settlement agreement between
Columbia and appellees/real parties in interest Pedro and Deborah DeLuna ("the
DeLunas"). The underlying case is a guardianship proceeding for the DeLunas'
incapacitated son, Javier DeLuna. The settlement resolved the DeLunas' claim for
personal injury damages against Columbia. By one issue, Columbia contends that the
probate court abused its discretion in denying approval of its settlement agreement with
the DeLunas. We dismiss the appeal for want of jurisdiction, and we conditionally grant
the petition for writ of mandamus.

I. Factual and Procedural Background

 Javier was born with severe brain damage on January 3, 1998, at South Austin
Hospital. In August 1999, the DeLunas filed suit as next friends of Javier against Ramona
Griffith Lopez, M.D., Pediatrics of South Austin, P.A. ("Pediatrics"), and Columbia. The
suit, filed in the 98th Judicial District Court of Travis County, alleged that Javier's injuries
were proximately caused by the negligence of Lopez, Pediatrics, and Columbia. Columbia
filed a cross-claim against Lopez and Pediatrics, alleging that only Lopez and Pediatrics
were liable for Javier's injuries.

 In 2003, guardianship proceedings were initiated for Javier in Probate Court No. 1
of Hidalgo County, the DeLunas' county of residence. See Tex. Prob. Code Ann. §
610(b)(1) (Vernon 2003) (stating that a guardianship proceeding for a minor may be
brought in the county in which both of the minor's parents reside). The DeLunas were
appointed and qualified by the probate court to be Javier's guardians on March 8, 2003.

 Subsequently, the DeLunas settled their claims against Lopez and Pediatrics for one
million dollars. The probate court approved this settlement and also approved the creation
of a "Special Needs Trust" for Javier into which the settlement proceeds were deposited. 
See id. § 867(b) (Vernon Supp. 2007). The DeLunas' lawsuit against Columbia, however,
remained pending in Travis County.

 On April 1, 2003, the DeLunas filed a motion in the probate court to transfer the
Travis County lawsuit to the probate court pursuant to section 608 of the Texas Probate
Code. See id. § 608 (Vernon Supp. 2007). (1) The probate court granted the DeLunas'
motion for transfer on June 3, 2003. Columbia responded by filing a petition for writ of
mandamus with the Texas Supreme Court. (2) Eventually, on November 18, 2005, the
supreme court conditionally granted Columbia's petition, directing the probate court to
vacate its order of transfer. In re Columbia/St. David's Healthcare Sys., L.P., 178 S.W.3d
781, 782 (Tex. 2005) (orig. proceeding) (per curiam). Specifically, the supreme court noted
that "section 15.007 of the Texas Civil Practice and Remedies Code directs that in a
wrongful death or personal injury case, the venue provisions in Chapter 15 take
precedence over the venue provisions of the Texas Probate Code." (3) See Tex. Prob. Code
Ann. § 608; Tex. Civ. Prac. & Rem. Code Ann. § 15.007 (Vernon 2002) (providing that the
venue provisions of chapter 15 of the civil practice and remedies code control in a personal
injury case by or against an executor, administrator, or guardian as such), § 15.093
(Vernon 2002) ("A tort suit for damages may be brought in the county and precinct in which
the injury was inflicted."). The Hidalgo County probate court complied with the supreme
court's mandate by vacating its earlier order of transfer. The DeLunas' personal injury suit
against Columbia remains pending in the Travis County district court.

 In May 2006, after eight hours of mediation, the DeLunas and Columbia reached
a settlement agreement. Under the agreement, one million dollars would be paid by
Columbia to Javier's special needs trust, less estate expenses and attorney's fees. (4) The
DeLunas and Columbia each filed motions requesting that the probate court approve the
settlement agreement pursuant to section 774 of the probate code. See Tex. Prob. Code
Ann. § 774(a)(4) (Vernon Supp. 2007) (permitting a guardian to "make a compromise or
a settlement in relation to property or a claim in dispute or litigation" only "if authorized by
an order of court."). The probate court appointed a guardian ad litem to independently
evaluate the settlement with regard to Javier's best interests. A hearing was held on the
motion on September 6, 2006, at which Columbia, the DeLunas, and the guardian ad litem
recommended that the settlement agreement be approved. Nevertheless, the probate
court denied the motion by written order on September 8, 2006. Columbia then filed its
notice of appeal. This appeal and petition for writ of mandamus ensued.

II. Jurisdiction

 Columbia filed both a direct appeal and a petition for writ of mandamus with this
Court, contending first that this Court has appellate jurisdiction to review the probate court's
order denying Columbia's motion to approve the settlement agreement, and requesting
mandamus relief in the alternative. We disagree that we have jurisdiction to review the
probate court's order on direct appeal.

 The question of jurisdiction is a legal question that we review de novo. Mayhew v.
Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). Generally, an appeal can only be
brought by a named party to a suit. City of San Benito v. Rio Grande Valley Gas Co., 109
S.W.3d 750, 754 (Tex. 2003). Although there are exceptions to the general rule, (5)
Columbia does not assert any such exception on appeal. We therefore conclude that
because Columbia was not a party to the guardianship proceeding, it has no standing to
appeal the probate court's judgment.

 We have, however, held that a party does not need to be a named party in the
underlying litigation in order to seek mandamus relief. United Oil & Minerals, Inc. v.
Costilla Energy, Inc., 1 S.W.3d 840, 844 (Tex. App.-Corpus Christi 1999, pet dism'd). To
be entitled to seek mandamus relief, the party must merely have a justiciable interest in the
underlying controversy. Id. (citing Terrazas v. Ramirez, 829 S.W.2d 712, 723 (Tex. 1991)
(orig. proceeding)). A justiciable controversy is one that is definite and concrete and
impacts the legal relations of parties having adverse legal interests. In the Interest of
C.T.H., 112 S.W.3d 262, 265-66 (Tex. App.-Beaumont 2003, no pet.) (citing City of Fort
Worth v. Pastusek Indus., Inc., 48 S.W.3d 366, 371 (Tex. App.-Fort Worth 2001, no pet.)). 
Here, the probate court's ruling clearly and concretely impacted the legal relationship
between Columbia and the DeLunas. We conclude that Columbia has a sufficient stake
in the judgment issued by the probate court to allow it to bring a petition for writ of
mandamus. See United Oil & Minerals, Inc., 1 S.W.3d at 844 (finding that a party that was
non-suited prior to trial had a sufficient stake in the controversy to be allowed to bring a
petition for writ of mandamus).

III. Discussion

A. Standard of Review

 To establish its entitlement to mandamus relief, Columbia is required to show a clear
abuse of discretion by the trial court for which there is no adequate appellate remedy. See,
e.g., In re AutoNation, Inc., 228 S.W.3d 663, 667 (Tex. 2007) (orig. proceeding); see also
Epstein v. Hutchison, No. 01-03-00279-CV, 2004 Tex. App. LEXIS 10390, at *3 (Tex.
App.-Houston [1st Dist.] Nov. 18, 2004, no pet.) (mem. op.) ("We review a trial court's
approval of a settlement involving a ward for abuse of discretion."). Having already
determined that Columbia has no standing to bring a direct appeal, we conclude that
Columbia has no adequate appellate remedy. We therefore turn to the issue of whether
the probate court's decision to deny approval of the settlement agreement was a clear
abuse of discretion. 

 A trial court clearly abuses its discretion if it reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error. Walker v. Packer, 827 S.W.2d
833, 839 (Tex. 1992) (orig. proceeding); In re Guerra, 235 S.W.3d 392, 403 (Tex.
App.-Corpus Christi 2007, orig. proceeding); see In re Colonial Pipeline Co., 968 S.W.2d
938, 941 (Tex. 1998) (orig. proceeding) (per curiam) (stating that mandamus will issue
when the trial court "acts in an unreasonable or arbitrary manner or, stated differently,
when it acts without reference to guiding rules and principles."). With respect to factual
issues or matters committed to the trial court's discretion, the reviewing court may not
substitute its judgment for that of the trial court. Walker, 827 S.W.2d at 839-40. The
relator must establish that the trial court could reasonably have reached only one decision. 
Id. at 840. Even if the reviewing court would have decided the issue differently, it cannot
disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. Id.

 Courts have not elucidated specific factors that must be examined to determine
whether a court has clearly abused its discretion in approving or disapproving a settlement
agreement in the guardianship context. Columbia urges us instead to review factors that
courts generally consider when reviewing approvals of settlement agreements in other
types of cases. For instance, when deciding whether to approve a settlement in a class
action lawsuit, courts consider the following factors:

(1) [W]hether the settlement was negotiated at arm's length or was a product
of fraud or collusion; (2) the complexity, expense, and likely duration of the
litigation; (3) the stage of the proceedings, including the status of discovery;
(4) the factual and legal obstacles that could prevent the plaintiffs from
prevailing on the merits; (5) the possible range of recovery and the certainty
of damages; [and] (6) the respective opinions of the participants, including
class counsel, class representatives, and the absent class members.


Gen. Motors Corp. v. Bloyed, 916 S.W.2d 949, 955 (Tex. 1996). In the context of a
shareholder derivative lawsuit, courts are to approve settlement agreements only if the
court determines that "there has been no fraud or collusion in arriving at the settlement
agreement, and that it is fair, reasonable, and adequate." Maher v. Zapata Corp., 714 F.2d
436, 455 (5th Cir. 1983). Finally, in a bankruptcy case, approval for the settlement of a
claim should be given by the court only if the settlement is:

[F]air and equitable and in the best interest of the estate . . . comparing the
terms of the compromise with the likely rewards of litigation. . . . In particular[,
the court] must evaluate and set forth in a comprehensible fashion: (1) The
probability of success in the litigation, with due consideration for the
uncertainty in fact and law; (2) The complexity and likely duration of the
litigation and any attendant expense, inconvenience and delay; and (3) All
other factors bearing on the wisdom of the compromise.


Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec.
Power Coop.), 119 F.3d 349, 355-56 (5th Cir. 1997). While these factors are not
necessarily controlling in the instant guardianship case, they are instructive to our
determination of whether the probate court acted in an unreasonable or arbitrary manner,
or without reference to any guiding rules or principles. See In re Colonial Pipeline Co., 968
S.W.2d at 941; Walker, 827 S.W.2d at 840; In re Guerra, 235 S.W.3d at 403.

B. Analysis

 We note first that the public policy of both our state and federal governments favors
agreements to resolve legal disputes through voluntary settlement procedures. Citgo Ref.
& Mktg., Inc. v. Garza, 187 S.W.3d 45, 61 (Tex. App.-Corpus Christi 2005, no pet.) (citing
Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 267 (Tex. 1992)); see Tex. Civ. Prac. & Rem.
Code Ann. § 154.002 (Vernon 2005) ("It is the policy of this state to encourage the
peaceable resolution of disputes, with special consideration to disputes involving the
parent-child relationship, including the mediation of issues involving conservatorship,
possession, and support of children, and the early settlement of pending litigation through
voluntary settlement procedures.").

 In reviewing the probate court's decision using the factors applicable to the approval
of settlement agreements in other contexts, and keeping in mind the clear public policy of
this state, it is apparent that the probate court's ruling was arbitrary and unreasonable. 
See Walker, 827 S.W.2d at 840; In re Guerra, 235 S.W.3d at 403. The record reveals that
the settlement agreement was negotiated at arm's length; that there was no fraud or
collusion in its negotiation; that there were several significant obstacles to the DeLunas'
recovery at trial in Travis County; that an award of damages against Columbia at trial was
far from certain; and that the parties involved--including the guardian ad litem appointed
by the court specifically for this purpose--were unanimous in their opinion that the
settlement was in Javier's best interests. See Cajun Elec. Power Coop., 119 F.3d at 355-56; Maher, 714 F.2d at 755; Bloyed, 916 S.W.2d at 955.

 With regard to the process of arriving at the agreement, the record is clear that the
parties were well informed, represented competently, and fully advised of the implications
of their settlement. They reached an agreement only after eight hours of mediation. There
was no indication that the DeLunas, or Columbia for that matter, had been pressured or
were under any sort of duress in arriving at the agreement.

 As to the DeLunas' chances of recovery at trial, Columbia had presented a viable
defense to their liability. In its fourth amended original answer, (6) Columbia asserted that
the damages suffered by Javier did not result from the incident that formed the basis of the
DeLunas' suit. Rather, Columbia contended that Javier's present condition was the result
of:

[I]n utero events and . . . complications of prematurity, including but not
limited to placental insufficiency, hypoxic events in utero, placenta previa,
placental abruption, severe hyaline membrane disease, patent ductus
arteriosus and the treatment thereof, hypotension, genetic abnormalities,
severe respiratory distress syndrome, anemia of prematurity and apnea of
prematurity.


Columbia also asserted that Deborah DeLuna failed to follow the advice and instruction of
her physicians and was therefore contributorily negligent. Further, Columbia asserted a
cross-claim against Lopez and Pediatrics, in order to determine the percentage of liability
attributable to those parties. It was not at all clear that the DeLunas would obtain a
favorable verdict at trial, and even if they did obtain such a verdict, it was not clear that
Columbia would be held liable for an amount exceeding the amount for which Lopez and
Pediatrics had settled.

 The DeLunas' trial counsel emphasized that he had "mock tried" the case
twice--once before a mock jury in Harris County and once before a mock jury in Travis
County. The results were favorable to the DeLunas in Harris County, but unfavorable in
Travis County, and this was why the DeLunas had sought to transfer the personal injury
case away from the Travis County district court to the Hidalgo County probate court. 
However, the supreme court's decision to grant mandamus relief to Columbia established
that, if the case were to be tried, it would be tried in Travis County. See In re Columbia/St.
David's Healthcare Sys., 178 S.W.3d at 782. At the hearing on the motions to approve the
settlement agreement, the DeLunas' trial counsel made it clear that the supreme court's
ruling presented a substantial obstacle to the DeLuna's eventual recovery, stating that "the
reality of a Travis County, highly educated, very professional, UT professor jury pool is
something that weighs heavily on my mind."

 We are cognizant that the factors applicable in other contexts are not necessarily
determinative of whether the probate court abused its discretion here. However,
regardless of the consideration of those specific factors, the record shows that the probate
court's decision to deny approval of the settlement agreement was without reference to any
guiding rules or principles. See In re Colonial Pipeline Co., 968 S.W.2d at 941. The court
appeared to rest its decision primarily on two bases. First, the court ruminated on the
possibility that Medicaid, though currently covering most of Javier's medical expenses,
might not continue to be in existence for the duration of Javier's lifetime. The record,
however, is devoid of any argument or fact that would allow us to consider this to be
anything more than a theoretical possibility.

 The second apparent basis of the court's decision was the fact that Columbia's
insurance policy had a liability limit of $12 million, which of course was considerably higher
than the amount that would be paid out according to the settlement. Crucially, however,
the court did not appear to consider whether or not the specific facts of this case warranted
a recovery of less than that limit. Instead, the court referred generally to its reluctance to
approve of any personal injury settlements in guardianship cases, without regard to the
reasonableness of the amount agreed upon. At the hearing on the parties' motions to
approve the settlement agreement, the probate judge stated as follows:

Let me tell you this. I have toyed with the idea of not approving any minor
PI settlements. Not any. It's too much responsibility, from the independent
point of view - not from the person involved with their injured family member
or the personal injury lawyer who, you know, has all the economic concerns
or the defense lawyer, who once it's settled, because they come up with an
amount, they move on to something else - to just let jury verdicts decide
these now. Maybe if I do that a couple of times and I see jury verdicts
unfavorable, it will change my mind. And, I mean, we've had some here. 
And this thing with settling defendants is very troublesome.[ (7)]


It is clear from this statement as well as others in the record that the probate court based
its decision on its overarching aversion to settling personal injury claims in guardianship
cases, rather than on a cold and objective evaluation of the reasonableness of this
particular settlement agreement by its own terms.

 Moreover, the court appeared to minimize the impact to the DeLunas of an
unfavorable verdict in an eventual trial, which remained a very real possibility:

[I]f the verdict - they say that the hospital did nothing and that you get zero,
there's a certain justice in that, because the jury has heard the testimony and
they found that there was no negligence. And I could live with that . . . [a]nd
so my instinct is to say, "Go get your jury verdict," encourage you that you
can live with whatever the result is, because there is justice in that either
way. Because if it's a higher amount and there was negligence, you would
want to hear that. And if it's no negligence, there's no reason for you to have
expected any compensation from this particular defendant if the jury says
they didn't do anything wrong.


 Columbia asserts that the trial court, in refusing to approve of the settlement
agreement, was essentially "gambling with the DeLunas' money." Given the probate
court's statements as contained in the record, it is difficult not to see the truth in Columbia's
assertion. In the event of an unfavorable verdict, the DeLunas would be responsible for
providing Javier with medical care, and so they were in the best position to determine
whether or not it was appropriate to risk going to trial given the uncertain circumstances
surrounding their case against Columbia. The probate court's usurpation of this authority
is contrary to the clearly established public policy of this state favoring settlements of legal
disputes and avoidance of litigation. See, e.g., Citgo Ref. & Mktg., 187 S.W.3d at 61.

 For the foregoing reasons, we conclude that the probate court's judgment was
arbitrary and unreasonable. See Walker, 827 S.W.2d at 840; In re Guerra, 235 S.W.3d
at 403. The trial court clearly abused its discretion in denying approval of the settlement
agreement, and Columbia had no adequate appellate remedy. See In re AutoNation, Inc.,
228 S.W.3d at 667; see also In re BP Products N. Am., Inc., 244 S.W.3d 840, 2008 Tex.
LEXIS 69, at *19 (Tex. 2008) (orig. proceeding) (finding that the trial court abused its
discretion in setting aside a valid discovery agreement without good cause and stating that
"[d]elaying review until appeal, under these circumstances, would defeat not only the
purpose of the discovery agreement, but also the strong public policy encouraging parties
to resolve their discovery disputes without court intervention.").

IV. Conclusion

 We conditionally grant Columbia's petition for writ of mandamus. The writ will issue
only if the probate court fails to comply. Further, we dismiss Columbia's direct appeal for
want of jurisdiction.




 _______________________

 DORI CONTRERAS GARZA,

 Justice


Opinion delivered and filed 

this the 17th day of April, 2008.




 
1. Section 608 of the probate code provides:


A judge of a statutory probate court, on the motion of a party to the action or of a person
interested in a guardianship, may transfer to the judge's court from a district, county, or
statutory court a cause of action appertaining to or incident to a guardianship estate that is
pending in the statutory probate court or a cause of action relating to a guardianship in which
a guardian, ward, or proposed ward in a guardianship pending in the statutory probate court
is a party and may consolidate the transferred cause of action with the other proceedings in
the statutory probate court relating to the guardianship estate.


Tex. Prob. Code Ann. § 608 (Vernon Supp. 2007).
2. Columbia also filed a motion to stay the order of transfer and a motion to continue the proceedings
in the Hidalgo County probate court. The probate court denied Columbia's motion to stay the order of transfer
on September 3, 2003 and denied its motion for continuance on November 17, 2003.
3. The supreme court noted that Columbia and DeLuna agreed upon this conclusion. See In re
Columbia/St. David's Healthcare Sys., L.P., 178 S.W.3d 781, 782 (Tex. 2005) (orig. proceeding) (per curiam).
4. The record reflects that the net amount to be paid to Javier's trust by Columbia under the terms of
the settlement agreement, after deductions for estate expenses and attorney's fees, was $559,962.05.
5. See Motor Vehicle Bd. of the Tex. Dep't of Transp. v. El Paso Indep. Auto. Dealers Ass'n, 1 S.W.3d
108, 110 (Tex. 1999) (noting that an exception to the general rule exists when the appellant is deemed to be
a party under the doctrine of virtual representation and that "[t]o claim virtual representation, an appellant must
show that: (1) it is bound by the judgment; (2) its privity of estate, title, or interest appears from the record; and
(3) there is an identity of interest between the appellant and a party to the judgment.")
6. Columbia filed its fourth amended original answer to the DeLunas' lawsuit in the Hidalgo County
probate court while their request for mandamus relief from the Texas Supreme Court was still pending.
7. The probate court did previously approve a settlement agreement between the DeLunas and the
other two defendants in the original personal injury suit, Lopez and Pediatrics, for the same amount. It is not
clear from the record why the court's decision was different with regard to the Columbia settlement agreement.