Petition
for Writ of Mandamus Conditionally Granted, in Part, and Denied, in Part, and
Memorandum Opinion filed April 22, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00009-CV



 

In Re Security National Insurance CoMPANY,
Relator



 



ORIGINAL PROCEEDING



WRIT OF MANDAMUS



MEMORANDUM OPINION


On January 6, 2010, relator, Security National
Insurance Company, filed a petition for writ of mandamus in this court.  See
Tex. Gov’t Code Ann. §22.221 (Vernon 2004); see also Tex. R. App. P.
52.  In the petition, Security asks us to compel the Honorable Dion Ramos,
presiding judge of the 55th District Court of Harris County, to set aside his order
of November 12, 2009, denying Security’s motion to compel appraisal pursuant to
the insurance policy, and instead grant the motion.  Security further requests
that we compel the trial court to abate the underlying case.  We conditionally
grant the petition in part and deny it in part.  

 

I

            Security
issued a commercial-insurance policy to Waloon Investment d/b/a Ramada
Limited.  The policy was in effect on September 13, 2008, when Hurricane Ike
struck Houston.  The property the policy covered—a Ramada Inn—sustained damage
from the hurricane.  Under the policy, Security insured Waloon against direct
physical loss or damage to covered property, as well as loss of business income
caused directly by a covered cause or loss.  On January 19, 2009, Waloon
submitted a proof of loss to Security.  On January 22, 2009, Waloon invoked the
policy’s appraisal provisions by making written demand on Security.[1] 
The policy contains two separate appraisal provisions, one for building
contents and one for business income.  The business income appraisal clause
provides:

If we and you disagree on the amount of Net Income and
operating expense or the amount of loss, either may make written demand for an
appraisal of the loss.  In this event, each party will select a competent and
impartial appraiser and notify the other of the appraiser selected within 20
days of such demand.  The two appraisers will select an umpire.  If they cannot
agree within 15 days upon such umpire, either may request that such selection
be made by a judge of a court having jurisdiction.  The appraisers will state
separately the amount of Net Income and operating expenses and the amount of
loss.

If they fail to agree, they will submit their differences
to the umpire.  A decision agreed to by any two will be binding as to the
amount of loss.  Each party will:

a.         Pay its chosen appraiser; and

b.         Bear the other expenses of the appraiser and
umpire equally.

If there is an appraisal:

a.         You will still retain your right to bring a
legal action against us, subject to the provisions of the Legal Action Against
Us Commercial Property Condition; and

b.         We will retain our right to deny the claim.

The
property coverage appraisal clause provides:  

If we and you disagree on the amount of loss, either may
make written demand for an appraisal of the loss.  In this event, each party will
select a competent and impartial appraiser and notify the other of the
appraiser selected within 20 days of such demand.  The two appraisers will
select an umpire.  If they cannot agree within 15 days upon such umpire, either
may request that selection be made by a judge of a court having jurisdiction. 
Each appraiser will state the amount of loss.  If they fail to agree, they will
submit their differences to the umpire.  A decision agreed to by any two will
be binding as to the amount of loss.  Each party will:

a.         Pay its chosen appraiser; and

b.         Bear the other expenses of the appraisal and
umpire equally.

If there is an appraisal:

a.         You will still retain your right to bring a
legal action against us, subject to the provisions of the Legal Action Against
Us Commercial Property Condition; and

b.         We will still retain our right to deny the
claim.

            On
February 16, 2009, Security notified Waloon of the appraiser it had selected.[2] 
But on February 23, 2009, Waloon informed Security that it was no longer pursuing
appraisal:

[T]he appraisal procedure invoked by Mr. Lindley has been
tabled for the time being until an investigation surrounding this claim has
been completed by my office.  This law firm is currently investigating the
damages caused by Hurricane Ike to the above property.  Once the investigation
is complete a formal response will be made to your previous letters, including
the one in which you point out my client bears some proportional responsibility
in this matter.  

            On
March 10, 2009, Belfor USA Group, the restoration contractor, filed suit
against Waloon Properties, Inc., for non-payment of contractor’s fees and
failure to endorse insurance drafts Security issued for services relating to
the restoration of the Ramada Inn.  According to Belfor’s original petition, on
September 17, 2008, Belfor and Waloon Properties entered into a written
contract in which Waloon agreed to assign to Belfor its right, title, and
interest in and to all insurance policies and proceeds covering restoration and
repair damage to the property that occurred as a result of Hurricane Ike. 
According to Security, Waloon rejected  and returned the checks Security issued
for repair work that included Belfor as payee, requesting Security to reissue
the claim-payment drafts to Waloon as the sole payee.  

            On
March 13, 2009, Security filed an interpleader and declaratory-judgment action,
depositing $178,480.91—the amount of the returned checks made in partial
payment of Waloon’s claim—into the registry of the court.  Security asserted it
that may be subject to multiple liability with regard to the insurance-policy
proceeds because of actual or potential rival claims, and it is unable to
determine which defendant, individually or collectively, is entitled to the
proceeds.  Security also sought “a judgment declaring the rights of the parties
related to:  (1) [the policy at issue] as respects the damage to the structure
and contents at issue, as well as the loss of business income, caused solely by
Hurricane Ike; and (2) the parties’ interest in the payment of the amounts. . .
.”  Security further sought a judgment declaring and determining that it has no
direct or vicarious liability in contract or tort to Waloon arising out of or
related to any claim by Waloon to Belfor concerning any of the negligent
repairs or defective workmanship by Belfor.  On May 20, 2009, Security’s
interpleader action was consolidated with Belfor’s lawsuit.  

            On
June 4, 2009, Waloon filed a counterclaim against Security for breach of
contract, violations of the Texas Deceptive Trade Practices Act, violations of
the Texas Insurance Code, breach of the duty of good faith and fair dealing,
breach of fiduciary duty, misrepresentations, and common-law fraud by
misrepresentation.  

            On
July 2, 2009, Security and Waloon participated in mediation.  On July 13, 2009,
Security’s counsel wrote to Waloon, asserting its right to an appraisal:

            Please recall that by letter January 27, 2009,
Waloon Investments, Inc. exercised its right to an appraisal to resolve
questions of the disputed value and extent of loss and damage to the Ramada
Inn.  After both Waloon Investment and Security National designated their
appraisers to begin the appraisal procedure, Waloon “tabled [the procedure] for
the time being” in a letter from Bill Voss dated February 23, 2009.

            Over the last few months, Security National has
received three separate estimates of the extent of loss and damage alleged by
Waloon Investment, and was presented with yet another set of loss and damage
amounts on July 2, 2009.

            Agreement has yet to be reached regarding the
extent of damage to the Ramada from Hurricane Ike.  Accordingly, Security
National reiterates that an appraisal of all disputed value and loss amounts
will move forward.  We designate Russ White . . . as the appraiser for Security
National.  

            Because Security National and Waloon Investment
currently disagree on

            •           the value of the property (to both
the building and contents),

            •           the amount of loss (to both the
building and contents),

            •           the amount of Net Income and
operating expense, and 

            •           the amount of business income loss
and extra expenses incurred,

Security National makes this written demand that Waloon
Investment resume the appraisal process.

            In response to this designation of Mr. White,
Waloon Investment will need to designate, in writing, its appraiser, within 20
days of the date of this letter, that is, by August 3, 2009.  Both appraisers
will then need to agree on the selection of an umpire.

            Please note that as stated in the policy, and
specifically reiterated here, Security National reserves its rights under the
policy and Texas law to contend that part of the loss or damage, either was due
to the property’s pre-existing condition, or did not result from Hurricane Ike,
or resulted from a failure of Waloon Investment to mitigate its damages. 

            On
August 6, 2009, Security wrote to Waloon Investment, in relevant part,
regarding its desire to proceed with appraisal:

            Having paid over $625,000 on this claim, Security
National recognizes that this is an important and significant claim.  It is
chiefly for that reason we remain very willing to abide a quick resolution for
a finalized claim total, whether in mediation or at appraisal.  However, we
continue to seek agreement that appraisal will promptly follow mediation if
mediation proves unsuccessful.

            To reiterate where the parties stand, our first
day of mediation took place on July 2, 2009.  On July 13, 2009, Security
National exercised its rights to have an impartial appraisal panel determine
the values and extent of loss (at both RCV and ACV) to the Ramada building,
business contents, and business income.  On July 23, 2009, you and I both
proposed moving forward with appraisal if a second day of mediation did not allow
us to reach settlement.

            Under the contract between the parties, Waloon
was to name its appraiser by Monday, August 3, 2009.  Waloon did not do so. 
You have now indicated that Waloon’s lawyers will resist efforts to appraise
the loss, even though Waloon initially requested appraisal, and the parties
began the process in January 2009.

            My purpose in writing now is to request that
Waloon rethink its opposition to appraisal.  For you and your clients to agree
to this proposal—mediation first, and if unsuccessful, proceed 11 [sic]
agreement for your consideration.  We sincerely desire to reach this agreement,
but if that is not possible, Security National will pursue its motion to compel
appraisal.  In the meantime, we remain committed to resuming mediation. 

            On
August 7, 2009, Waloon wrote Security that because it has a number of defenses
to appraisal, it “cannot agree to voluntarily enter the appraisal process.”  On
August 18, 2009, the parties attended a second day of mediation.  On September
21, 2009, Security filed its verified motion to compel appraisal, which the
trial court denied on November 12, 2009.  

II

            To
be entitled to the extraordinary relief of a writ of mandamus, the relator must
show that the trial court abused its discretion and there is no adequate remedy
by appeal.  In re Gulf Exploration, LLC, 289 S.W.3d 836, 842 (Tex. 2009)
(orig. proceeding).  A trial court abuses its discretion if it reaches a
decision so arbitrary and unreasonable as to constitute a clear and prejudicial
error of law, or if it clearly fails to correctly analyze or apply the law.  In
re Cerberus Capital Mgmt., L.P., 164 S.W.3d 379, 382 (Tex. 2005) (orig.
proceeding) (per curiam); Walker v. Packer, 827 S.W.2d 833, 839 (Tex.
1992) (orig. proceeding).  In determining whether appeal is an adequate remedy,
we consider whether the benefits outweigh the detriments of mandamus review.  In
re BP Prods. N. Am., Inc., 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding). 


III

Abuse
of Discretion

            Appraisal
clauses are uniformly included in most forms of property-insurance policies.  State
Farm Lloyds v. Johnson, 290 S.W.3d 886, 888 (Tex. 2009).  Virtually every
insurance policy contains provisions specifying appraisal as a means of
resolving disputes regarding the “amount of loss” for a covered claim.  Id. 
An appraisal “‘binds the parties to have the extent or amount of the loss
determined in a particular way.’”  In re Allstate County Mut. Ins. Co.,
85 S.W.3d 193, 195 (Tex. 2002) (orig. proceeding) (quoting Scottish Union
& Nat’l Ins. Co. v. Clancy, 71 Tex. 5, 8 S.W. 630, 631 (1888)). 
Because appraisals do not require attorneys, lawsuits, pleadings, subpoenas, or
hearings, appraisals can generally be completed with less time and expense than
motions contesting it.  State Farm Lloyds, 290 S.W.3d at 894.  

            The
Texas Supreme Court recently observed that “appraisal is intended to take place
before suit is filed.”  Id.  Indeed, both the Texas Supreme Court and
others “have held it is a condition precedent to suit.”  Id.  “Like any
other contractual provision, appraisal clauses should be enforced.”  Id. 
Because the amount of loss must be determined in every property damage case,
“appraisals should generally go forward without preemptive intervention by the
courts.”  Id.  

            Waloon
asserts, from February 23, 2009, when it withdrew from the appraisal process,
through July 13, 2009, Security neither objected to such withdrawal nor
independently invoked appraisal and, therefore, waived its right to demand
appraisal.  Waloon further contends Security waived appraisal by initiating the
underlying litigation.  The affirmative defense of waiver can be asserted
against a party who intentionally relinquishes a known right or engages in
intentional conduct inconsistent with claiming that right.  Tenneco, Inc. v.
Enter. Prods. Co., 925 S.W.2d 640, 643 (Tex. 1996).  Waiver is largely a
matter of intent, and for implied waiver to be found through a party’s actions,
intent must be clearly demonstrated by the surrounding circumstances.  Jernigan
v. Langley, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam).  There can be no
waiver of a right if the party sought to be charged with waiver says or does
nothing inconsistent with an intent to rely upon such right.  Id. 
Silence or inaction, for so long a period as to show an intention to yield the
known right is sufficient to establish waiver.  Tenneco, 925 S.W.2d at
643.  Waiver is ordinarily a question of fact.  Id.  However, where the
facts and circumstances are admitted or clearly established, the question
becomes one of law.  Id.  

            Security
argues, even if it had not asserted its intent to participate in appraisal before
filing its interpleader action and participating in the first day of mediation,
it did not engage in conduct that would establish waiver because an “impasse”
had not been reached until after the conclusion of the second day of mediation
in August 2009.  The date of disagreement or impasse is the point of reference
to determine whether a demand for an appraisal is made within a reasonable
time.  In re Slavonic Mut. Fire Ins. Ass’n, No. 14-09-01057-CV, 2010 WL
1236333, at *5 (Tex. App.—Houston [14th Dist.] Apr. 1, 2010, orig. proceeding);
see also Sanchez v. Prop. & Cas. Ins. Co. of Hartford, No.
H-09-1736, 2010 WL 413687, at *5 (S.D. Tex. Jan. 27, 2010) (determining proper
point of reference for determining whether insurer waived right to invoke
appraisal by delay is point at which insurer knew appraisal clause could be
invoked because of disagreement over amount of damages, i.e., point of impasse
with insured).[3] 
In light of Waloon having invoked the appraisal clause on January 22, 2009,
“due to an inability to reach an agreement on the amount of loss,” we conclude the
date of disagreement is January 22, 2009.  As explained below, under the facts
and circumstances of this case, even though the date of disagreement was
January 22, 2009, Security independently asserted its right to appraisal within
a reasonable time and did not waive its right to appraisal.  

            The
Texas Supreme Court set forth the following test for waiver of the right to
appraisal:

“To constitute waiver, the acts relied on must be such as
are reasonably calculated to induce the assured to believe that a compliance by
him with the terms and requirements of the policy is not desired, or would be
of no effect if performed.  The acts relied on must amount to a denial of
liability, or a refusal to pay the loss.”  

In
re Slavonic Mut. Fire Ins. Ass’n, 2010 WL 1236333, at
*6 (quoting Scottish Union & Nat’l Ins. Co., 8 S.W. at 632).  

            Waloon
claims, to the extent that Security has denied any portion of coverage, Security
has waived the right to appraisal.  Denying coverage under an insurance policy
waives the right of the insurer to request an appraisal.  See In re Acadia
Ins. Co., 279 S.W.3d 777, 780 (Tex. App.—Amarillo 2007, orig. proceeding)
(citing Am. Cent. Ins. Co. v. Terry, 26 S.W.2d 162, 166 (Tex. Comm. App.
1930, holding approved)).[4] 
But Waloon has not identified or specified any portion of coverage Security has
denied. [5] 
Moreover, we reject Waloon’s contention that Security waived its right to
appraisal by filing the interpleader, in which Security tendered the undisputed
portion of the loss.  In the same pleading as its petition for interpleader, Security
sought: 

a judgment declaring the rights of the parties related to: 
(1) [the policy at issue] as respects the damage to the structure and
contents at issue, as well as the loss of business income, caused solely by
Hurricane Ike; and (2) the parties’ interest in the payment of the amounts.[6] 


However,
Security’s request for a declaratory judgment as to the coverage does not constitute
waiver of its right to appraisal.  Appraisal is limited to determining amounts
of loss, and not determining whether the insurer should pay.  See State Farm
Lloyds, 290 S.W.3d at 890 n.22 (quoting 15 Couch on Insurance § 210:42)
(“‘As a general rule, the sole purpose of an appraisal is to determine the
amount of damage.’”).[7] 


            Here,
Security showed its willingness to participate in the appraisal after Waloon
initially invoked the appraisal clause of the policy.  Also, Waloon submitted
its proof of loss on January 19, 2009, and March 12, 2009, and further
submitted and estimate of damages on June 9, 2009.  Moreover, Security did not
waive appraisal by attending mediation.  See Scottish Union & Nat’l Ins.
Co. v. Clancey, 83 Tex. 113, 18 S.W. 439, 441 (1892) (“The facts of this
case show that there was no waiver of the stipulations in the policy relating
to proof of loss and appraisement of the property.  They show, on the other
hand, that appellants, through their agents and adjuster, were endeavoring to
ascertain the amount of damage. . . .”); see also Sanchez, 2010 WL
413687, at *8 (stating insurer’s attempts to adjust and settle claim do not
waive insurer’s right to appraisal).  

            Waloon
also claims Security breached its contractual obligations by failing to pay
timely and complete policy benefits for the costs to properly repair the damage
to the commercial property.  We do not believe that any alleged breach of the
policy by Security amounts to a waiver of its right to appraisal.  See,
e.g., In re State Farms Lloyds, Inc., 170 S.W.3d 629, 634–35 (Tex. App.—El
Paso 2005, orig. proceeding) (holding insurer’s alleged failure to comply with
other policy provisions did not show intent to dispense with policy’s
requirements which would allow insurer to arrive at amount of loss).[8]  

            We
conclude the record in this case does not demonstrate Security engaged in
conduct that establishes a denial of liability or refusal to pay the loss, or
would otherwise lead Waloon to believe that compliance with the terms of the
policy was not desired.  See Scottish Union & Nat’l Ins. Co., 8 S.W.
at 632.  Therefore, the trial court abused its discretion by denying Security’s
motion to compel appraisal.[9] 


No
Adequate Remedy by Appeal

            The
denial of an appraisal vitiates or severely compromises the defendant’s ability
to defend a breach-of-contract claim.  In re Allstate County Mut. Ins. Co.,
85 S.W.3d at 196.  Here, Waloon has asserted a claim for breach of contract.  By
not compelling appraisal, the trial court has denied Security’s ability to defend
against Waloon’s breach-of-contract claim.  See In re Slavonic Mut. Fire
Ins. Ass’n, 2010 WL 1236333, at *7 (holding that “the trial court’s action
denies Slavonic the development of proof going to the heart of its case”).  We
conclude Security does not have an adequate remedy by appeal.  See id. (holding
appeal was not adequate remedy for denial of appraisal).  

Abatement

            Security
also requests that we compel the trial court to abate the underlying litigation
pending completion of appraisal.  A review of the mandamus record, however,
does not reflect that Security moved for or otherwise requested that the trial
court abate the case.  A party’s right to mandamus relief generally requires a
predicate request for some action and a refusal of that request.  In re
Perritt, 992 S.W.2d 444, 446 (Tex. 1999) (orig. proceeding).  Because
Security made no such request to the trial court, we cannot grant Security’s
petition for writ of mandamus on the issue of abatement.  

* * *

We hold the trial court abused its discretion by
denying Security’s motion to compel appraisal, and Security does not have an
adequate remedy by appeal.  Accordingly, we conditionally grant Security’s
petition for writ of mandamus with respect to its motion to compel appraisal and
direct the trial court to set aside its order of November 12, 2009, and instead
grant Security’s motion.  We deny Security’s petition with respect to its
request that we compel the trial court to abate the underlying case.  The writ
will issue only if the trial court fails to act in accordance with this
opinion.

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

Panel consists of Justices Yates,
Seymore, and Brown.









[1] The
January 22, 2009 letter from Waloon’s counsel states, in relevant part:

Pursuant to the appraisal
provisions of the Policy and due to an inability to reach agreement on the
amount of loss, Waloon hereby makes written demand for an appraisal of the loss
being handled under the Claim.  Waloon names Jansen International, L.L.C. as
its appraiser for the appraisal process.  Waloon hereby requests that Unitrin
notify it within 20 days of the appraiser selected by Unitrin, as required by
the Policy.





[2] The
February 16, 2009 letter from the adjuster, J.W. Bonanno, further stated:

Security National can
neither accept nor deny the Sworn Statement in Proof of Los at this time. 
Rather, Security National is continuing to investigate the cause and scope of
the loss and the claims made by Waloon Investment.  In terms of Security
National’s additional investigation, please find enclosed a February 16, 2009
letter from our attorneys.  In that letter, Shannon, Gracey requests various
documents to assist Security National in its investigation of the claim, and
also requests scheduling of examinations under oath.  Shannon, Gracey will be
in contact with your attorney to further discuss the documents requested for
review and to schedule your examinations under oath.

*        *        *

Additionally I would remind
you that pursuant to the terms of the policy, “If there is an appraisal, we
still retain our right to deny the claim.”  Thus in the event the appraisers or
umpires attempt to decide any issues of coverage, Security National is not
bound by those findings. . . .





[3] Here,
the policy does not contain a time period of time in which to demand
appraisal.  An insurer does not waive demand-for-appraisal provision by failing
to assert it within some contractually specified time period when the contract
does not contain a deadline for demanding appraisal.  In re Clarendon Ins.
Co., No. 2-04-305-CV, 2004 WL 2984916 (Tex. App.—Fort Worth Dec. 23, 2004,
orig. proceeding [mand. denied]) (mem. op.).  





[4] In Acadia,
a letter from the adjuster stated the inspection revealed no apparent damage to
two roofs from wind/hail within the policy period of the policy.  279 S.W.3d at
780.  Another letter from the insurer’s counsel showed that the insurer did not
think the claim in question was a covered event and it could not be required to
submit a claim for an appraisal if there was no coverage.  Id.  The
court of appeals held the trial court had evidence that the insurer had
intentionally and unequivocally relinquished the right to appraisal so that it
could challenge coverage.  Id.  





[5] To date,
Security has paid approximately $650,000 on the undisputed portion of the
claim; Waloon maintains this is an underpayment of the claim.  





[6] Emphasis
added.





[7] The Texas
Supreme Court has stated that “limiting appraisal to damages and not liability
is surely still correct.”  State Farm Lloyds, 290 S.W.3d at 889–90.  The
court further explained that “in most cases appraisal can be structured in a
way that decides the amount of loss without deciding any liability questions.” 
Id. at 894.  When a divisible injury to property may have several
causes, appraisers can assess the amount of damage and leave causation up to
the courts.  Id.  When divisible losses are involved, appraisers can
decide the cost to repair each without deciding who must pay for it.  Id.
 





[8] In
dicta, the Sanchez court explained:  “Indeed, if insureds could escape
appraisal by merely alleging an anticipatory breach (or repudiation) whenever
there is a dispute over coverage or claims handling, appraisal clauses would be
virtually a nullity.  Such a result is in direct contravention of the strong
public policy in favor of enforcing such clauses.”  2010 WL 413687, at *8 n.10.





[9] We
reject Waloon assertion that compelling appraisal in this case would violate
its right to have this dispute resolved by a jury.  The Texas Supreme Court has
held that appraisal “is a condition precedent to suit,” and “is intended to
take place before suit is filed.”  State Farm Lloyds, 290 S.W.3d at 894.
 We also reject Waloon’s contention that to force completion of appraisal would
militate against judicial efficiency because “[i]t would be a rare case in
which appraisal could not be completed with less time and expense than it would
take to file motions contesting it.”  Id.