COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

READYONE INDUSTRIES, INC.,                              No. 08-15-00157-CV

§

Appellant,                                              Appeal from

§

v.                                                      346th District Court

§

IVETH RODRIGUEZ LOPEZ,                                  of El Paso County, Texas

§

Appellee.                                               (TC # 2014-DCV1525)

§

## O P I N I O N

This is an interlocutory appeal from the denial of a motion to compel arbitration pursuant to Section 51.016 of the Texas Civil Practice and Remedies Code. TEX.CIV.PRAC.&REM.CODE ANN. § 51.016 (West 2015)(permitting an interlocutory appeal from the denial of a motion to compel arbitration under the Federal Arbitration Act). ReadyOne Industries, Inc. raises one issue contending the trial court abused its discretion in denying its motion to compel arbitration and stay proceedings pending arbitration. For the reasons that follow, we reverse and remand with instructions to enter an order compelling arbitration.

### FACTUAL SUMMARY

ReadyOne is a garment manufacturer located in El Paso, Texas. Pursuant to a contract with the United States Government, ReadyOne manufactures and supplies apparel for the United States Military. ReadyOne's involvement in interstate commerce includes purchasing goods and

services from out-of-state that are shipped to it in Texas, and manufacturing goods that are then shipped and used out of state. ReadyOne employed Iveth Rodriguez Lopez in May 2011 as a sewing machine operator. On May 31, 2011, she signed a document entitled "Receipt and Arbitration Acknowledgment." Her signature acknowledged that she received and read, or had the opportunity to read, the following documents: the Mutual Agreement to Arbitrate (MAA), the Benefits Schedule, and the Summary Plan Description (SPD) for the Employee Injury Benefit Plan. She further acknowledged by her signature that claims and disputes covered under the MAA "must be submitted to an arbitrator, rather than a judge and jury in court;" that she and ReadyOne were mutually "agreeing to comply with [the] arbitration requirements;" that all covered claims would be subject to the MAA; and that "any decision of an arbitrator will be final and binding."

The MAA signed by the parties provided that all covered claims would be exclusively resolved by binding arbitration under the Federal Arbitration Act (FAA). The MAA set out all arbitration procedures, contained an integration clause providing that it constituted the complete agreement and superseded any prior agreement regarding arbitration; and indicated that any oral representations made before or after Lopez was hired did not alter the MAA.

In October 2013, Lopez claimed that she suffered injuries resulting from "repetitive sewing tasks." In her affidavit submitted to the trial court, Lopez did not deny signing the MAA, but rather, insisted that she did not remember signing the document. She stated that she signed numerous documents related to her employment and hiring, but ultimately did not know why she was signing them. According to her affidavit, ReadyOne told her that the documents were for benefits if she got hurt on the job. She further claimed to have been misled into believing that the documents were not important and were only routine documents that ReadyOne needed to

2

complete its paperwork for her employment. She did not know that: (1) she was signing an arbitration agreement; (2) she was waiving her rights; (3) she could seek the advice of counsel before signing the documents; or (4) she was permitted to decline to sign the documents. She also claimed that ReadyOne never told her that the arbitration agreement was a "stand-alone" document and she was not given any time to review the documents before signing them. Finally, Lopez contended that ReadyOne never told her that she was signing an arbitration agreement or what that meant, no one ever explained to her the contents of the documents or their effect, she was never provided with an orientation session, and no one ever translated the documents for her. She insisted that she never would have signed the arbitration agreement had she been advised that it meant she was waiving her right to a jury trial.

In addition to her claims concerning the MAA, Lopez's affidavit also provided the trial court with a description of several learning disorders from which she suffers, including: a dysthymic disorder, reading disorder, disorder of written expression, and a language disorder. She further related to the trial court that she had a reading ability below the second grade level and experienced difficulties with her memory.

Lopez filed her original petition in April 2014 and alleged that no valid MAA existed. She provided the following reasons, relevant to this appeal, as to why the MAA and Injury Benefit Plan were void and invalid:

- The Federal Arbitration Act (FAA) is inapplicable to the MAA.

- The documents are procedurally and substantively unconscionable.

- The MAA is unenforceable because the FAA is unconstitutional under the Tenth Amendment of the United States for hourly employees involved in a labor job.

- The MAA is void in violation of the Texas Labor Code Sections 406.033(e) and 406.035. TEX.LAB.CODE ANN. §§ 406.033(e), 406.035 (West 2015).

3

- The MAA is illusory and unenforceable.

- The MAA is unenforceable under Texas law, specifically Section 171.002(a)(3) of the Texas Civil Practice and Remedies Code. TEX.CIV.PRAC. & REM.CODE ANN. § 171.002(a)(3)(West 2011).

In response, ReadyOne filed its original answer as well as a motion to compel arbitration. In support of its motion, ReadyOne submitted the affidavit of its Director of Human Resources and Compliance, Guadalupe Madrid, and the following five documents: (1) the MAA (Exhibit A); (2) the Receipt and Arbitration Acknowledgment (Exhibit B); (3) the Employee Injury Benefit Plan (Exhibit C); (4) the Summary Plan Description (SPD) (Exhibit D); and (5) the Employee Orientation PowerPoint Presentation (Exhibit E). Following a hearing in August 2014, the trial court denied the motion to compel. ReadyOne now appeals.

## DENIAL OF ARBITRATION

In its sole issue, ReadyOne challenges the order refusing to compel arbitration. Lopez raised several arguments in opposition to the motion to compel arbitration and the trial court denied the motion without specifying the basis for the ruling. ReadyOne has addressed each of these arguments and defenses on appeal.

### Standard of Review and Relevant Law

We review a trial court's decision to grant or deny a motion to compel arbitration for an abuse of discretion. *Ellman v. JC General Contractors*, 419 S.W.3d 516, 520 (Tex.App.--El Paso 2013, no pet.). Under this standard, we defer to a trial court's factual determinations if they are supported by evidence, but we review a trial court's legal determinations *de novo*. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009); *Ellman*, 419 S.W.3d at 520.

A party seeking to compel arbitration must (1) establish the existence of a valid arbitration agreement; and (2) show that the claims asserted are within the scope of the

4

agreement. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005); *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 797 (Tex.App.--El Paso 2013, no pet.). We apply state contract principles to determine whether a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *Delfingen*, 407 S.W.3d at 797. Once the party seeking to compel arbitration proves that a valid arbitration agreement exists, a presumption attaches favoring arbitration and the burden shifts to the party resisting arbitration to establish a defense to enforcement. *Delfingen*, 407 S.W.3d at 797. In the context of enforcement, defenses refer to unconscionability, duress, fraudulent inducement, and revocation. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001); *Delfingen*, 407 S.W.3d at 797. Because the law favors arbitration, the burden of proving a defense to arbitration is on the party opposing it. *IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, 387 S.W.3d 799, 807 (Tex.App.--El Paso 2012, no pet.), *citing J.M. Davidson*, 128 S.W.3d at 227.

Because the trial court here did not enter specific findings of fact or conclusions of law to explain its denial of the motion to compel arbitration, we must uphold the trial court's decision on any appropriate legal theory urged below. *Shamrock Foods Co. v. Munn & Assocs., Ltd.*, 392 S.W.3d 839, 844 (Tex.App.--Texarkana 2013, no pet.); *Inland Sea, Inc. v. Castro*, 420 S.W.3d 55, 57-59 (Tex.App.--El Paso 2012, pet. denied)(affirming denial of motion to compel arbitration on alternative ground where order did not specify the basis for the ruling); *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 854 (Tex.App.--Houston [14th Dist.] 2007)(orig. proceeding).

### The FAA Applies

We begin our review by examining whether the FAA is applicable. Citing *Bernhardt v. Polygraphic Company of America*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), Lopez argues that the FAA does not govern the MAA because there is no evidence she was personally

5

engaged in interstate commerce. In *Bernhardt*, the plaintiff entered into an employment contract with Polygraphic to become superintendent of the company's lithograph plant in Vermont. *Bernhardt v. Polygraphic Company of America*, 218 F.2d 948, 949 (2nd Cir. 1955). The employment contract contained an arbitration provision. *Id.* Following his discharge, Bernhardt sued Polygraphic in a Vermont state court for breach of contract. *Id.* The Second Circuit Court of Appeals held that the FAA applied to the employment contract, *Bernhardt*, 218 F.2d at 949-50, but the Supreme Court reversed because it concluded that the contract did not evidence a transaction involving commerce within the meaning of section 2 of the FAA, and there was no evidence that Bernhardt, while performing his duties under the employment contract, was working in commerce, producing goods for commerce, or was engaging in activity that affected commerce. *Bernhardt*, 350 U.S. at 200-01, 76 S.Ct. at 275.

The instant case is distinguishable from *Bernhardt* because the MAA specifically provides that ReadyOne is engaged in commerce as that term is defined in Section 2 of the Federal Arbitration Act and the "FAA governs all aspects of this Agreement." It is well established that parties may expressly agree to arbitrate under the FAA. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011); *Lucchese, Inc. v. Solano*, 388 S.W.3d 343, 348 (Tex.App.--El Paso 2012, no pet.). Further, ReadyOne submitted evidence that it was regularly engaged in interstate commerce in that it purchases and receives goods and services from outside the state of Texas and it manufactures goods that are shipped and used outside of the state. We conclude that the FAA applies to the MAA. *See In re Border Steel, Inc.*, 229 S.W.3d 825, 830-31 (Tex.App.--El Paso 2007)(orig. proceeding)(holding that the FAA applied where the defendant presented evidence that it engaged in interstate commerce and the arbitration agreement

contained a provision that the FAA governed). Therefore, to the extent the trial court denied ReadyOne's motion on this basis, it erred in doing so.

## The MAA is not Ambiguous or Illusory

Lopez asserted at the trial court level that the MAA is illusory and, thus, invalid because it bestows upon ReadyOne the unilateral right to terminate it at any time. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010)(arbitration agreement is illusory if one party can avoid its promise to arbitrate by unilaterally amending or terminating arbitration provision). At the heart of Lopez's assertion is her contention that the MAA is incorporated by reference in the SPD and the Injury Benefit Plan. Therefore, according to Lopez, the provisions for termination and amendment in these documents apply rather than the termination provision in the MAA. She is mistaken.

The MAA is a five-page, thirteen-paragraph document requiring ReadyOne and Lopez to arbitrate covered claims arising on or after October 1, 2007. Paragraph 5 addresses the scope of the agreement to arbitrate and provides: "[t]his Agreement is mutual, covering all claims that Company or Claimant may have which arise from . . . [a]ny injury suffered by Claimant while in the [c]ourse and [s]cope of Claimant's employment with Company[.]" Paragraph 10, titled "Termination of Agreement," states:

> Company shall have the right to prospectively terminate this Agreement. Termination is not effective for Covered Claims which accrued or occurred prior to the date of the termination. Termination is also not effective until ten (10) days after reasonable notice is given to Claimant.

This provision is not illusory because it does not permit ReadyOne to unilaterally or retrospectively terminate the agreement and requires ReadyOne to provide ten days' notice to prospectively terminate. *In re Halliburton Co.*, 80 S.W.3d 566, 569-70 (Tex. 2002)(holding that language preventing an employer from retroactively applying arbitration agreement changes to

7

claims of which it had actual knowledge, combined with a provision furnishing ten days' advance notice to employees before unilateral termination of the agreement, rendered the agreement non-illusory because it restricted the employer from "avoid[ing] its promise to arbitrate by amending the provision or terminating it altogether"); *ReadyOne Industries, Inc. v. Carreon*, 458 S.W.3d 621, 623-24 (Tex.App.--El Paso 2014, no pet.)(holding that provision identical to the one in this case contains the proper savings clause under *Halliburton* and is not illusory).

Lopez maintains the trial court could have concluded the parties intended to be bound, not by Paragraph 10 of the MAA, but by the termination and amendment provisions in the Injury Benefit Plan and SPD, which permit ReadyOne to unilaterally modify or amend them without notice. In the Injury Benefit Plan, the provisions state:

> 12.1 *Termination and Amendment.* The Company shall have the right and power at any time and from time to time to amend this Plan, in whole or in part, on behalf of all Employers, and at any time to terminate this Plan or any Employer's participation hereunder; provided, however, that no such amendment or termination shall reduce the amount of any benefit then due and payable to, or with respect to, a Participant under the Plan in connection with an Injury occurring prior to the date of such amendment or termination. Any such amendment or termination shall be pursuant to formal written action of a representative authorized to act on behalf of the Company. This Plan document shall also automatically cease to be effective for all purposes as of the date of the cancellation, final expiration, or non-renewal of a Comprehensive Employers Indemnity policy issued to the Company through The Combined Group, except for purposes of the administration of any open claims occurring prior such date. Only the Company's proper adoption of another, successor benefit plan document can prevent such automatic termination of this Plan.

In the SPD, the provisions state:

> **AMENDMENT OR TERMINATION OF PLAN**
>
> The company presently intends to continue the Plan indefinitely, but the Company reserves the right to amend, modify, or terminate the Plan at any time; provided, however, no amendment or termination of the Plan will reduce the amount of any benefit then due and payable under the Plan to or with respect to you in

8

connection with an Injury occurring prior to the day of such amendment or termination. Any such amendment or termination will be adopted pursuant to formal written action of a representative authorized to act on behalf of the Company.

The trial court could have so concluded, according to Lopez, by resolving certain latent ambiguities in her favor in unity with the pertinent rules of contract construction. Contrary to her assertion, neither the phraseology in the MAA nor the make-up of the parties' agreement is ambiguous.

Whether an arbitration agreement is ambiguous is a question of law subject to de novo review. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006). Ambiguity is determined by examining the contract as a whole in light of the circumstances existing when the contract was executed. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *IHR Security, LLC v. Innovative Bus. Software, Inc.*, 441 S.W.3d 474, 478 (Tex.App.--El Paso 2014, no pet.). We examine the entire document and consider each part with every other part so that the effect and meaning of one part on any party may be determined. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *IHR Security*, 441 S.W.3d at 478. The entire document is examined in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless. *MCI Telecomm. Corp. v. Tex. Utilities Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999); *IHR Security*, 441 S.W.3d at 478. We presume the parties to a contract intend every clause to have some effect. *Heritage Res.*, 939 S.W.2d at 121; *IHR Security*, 441 S.W.3d at 478.

Contract language subject to a certain or definite meaning is not ambiguous and is construed as a matter of law. *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex. 2009); *Coker*, 650 S.W.2d at 393. If a contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, then it is ambiguous

and creates a fact issue concerning the parties' intent. *J.M. Davidson, Inc.*, 128 S.W.3d at 229; *IHR Security*, 441 S.W.3d at 478; *Daftary v. Prestonwood Mkt. Square, Ltd.*, 404 S.W.3d 807, 813 (Tex.App.--Dallas 2013, pet. denied).

Lopez argues the term "Program Agreement" in the MAA means something other than only the MAA, because the MAA is defined as 'Agreement' in the MAA. The agreement is referred to as the "Agreement" throughout the MAA but it is also referred to as the "Arbitration Program" in Paragraph 8. The term "Program Agreement" is used in Paragraph 12, which is titled "Sole and Entire Agreement" and provides as follows:

> This Program Agreement constitutes the parties' complete agreement and supersedes any prior agreement regarding arbitration of Covered Claims which occur during the Term of this Agreement. Any agreement contrary to, or modifying, any of the provisions included in this Agreement must be entered into, in writing, by the chief executive officer of Company. Oral representations made before or after Employee is hired do not alter this Agreement.

We disagree with the notion the parties intended the term "Program Agreement" to mean something other than only the MAA. The fact that the term "Program Agreement" is not used anywhere else in the MAA does not necessarily mean it is susceptible to more than one meaning. Paragraph 12 states the agreement supersedes any "prior agreement regarding arbitration of Covered Claims which occur during the Term of this Agreement." The MAA defines "Covered Claims" as any and all claims included in or described by Paragraph 5(a) and it specifically excludes from its reach "[c]laims for benefits under the Company's Employee Injury Benefit Plan." When Paragraph 12 is considered as part of the entire MAA, it is obvious the phrase "This Program Agreement" is referring only to the parties' agreement to arbitrate covered claims. Because this term has a certain or definite meaning, the MAA is not ambiguous.

Lopez's illusory defense provides no basis for denying ReadyOne's motion to compel arbitration. Thus, to the extent the trial court relied on this defense in denying the motion, it erred.

**Procedural Unconscionability**

Lopez also raised the defense of unconscionability in the trial court. Agreements to arbitrate disputes between employers and employees are generally enforceable under Texas law. *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). There is nothing *per se* unconscionable about an agreement to arbitrate employment disputes and Texas law has historically favored agreement to resolve such disputes. *Id.* But an arbitration agreement is invalid if it is unconscionable. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677-79 (Tex. 2006); *In re Halliburton*, 80 S.W.3d at 572. Because the law favors arbitration, the party opposing arbitration bears the burden to prove unconscionability. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001).

Unconscionability of an arbitration agreement may exist in one or both of two forms: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *In re Halliburton*, 80 S.W.3d at 571; *Pilot Travel Centers, LLC v. McCray*, 416 S.W.3d 168, 180 (Tex.App.--Dallas 2013, no pet.). Unconscionability has no precise legal definition because it is not a concept but a determination to be made in light of several factors. *Delfingen*, 407 S.W.3d at 798. In determining whether a contract is procedurally unconscionable, we must examine (1) the "entire atmosphere" in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the "non-bargaining ability" of one party; (4) whether the contract was illegal or against public

11

policy; and (5) whether the contract is oppressive or unreasonable. *Delfingen*, 407 S.W.3d at 798; *Ski River Development, Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex.App.--Waco 2005, pet. denied). The totality of the circumstances must be assessed as of the time the contract was formed. *Delfingen*, 407 S.W.3d at 798; *Ski River*, 167 S.W.3d at 136. The circumstances surrounding the negotiations must be sufficiently shocking to compel the court to intercede. *Delfingen*, 407 S.W.3d at 798; *Ski River*, 167 S.W.3d at 136. We apply the abuse of discretion standard articulated in *Delfingen* to this issue. 407 S.W.3d at 799-800 (concluding that unconscionability is a legal question which is reviewed *de novo* by the appellate court, but the court must defer to the trial court's fact findings if they are supported by the evidence).

We begin by examining the issue of procedural unconscionability. The evidence established that Lopez was provided with both English and Spanish language versions of the documents at issue. Lopez averred in her affidavit that she has limited ability to read and write, and that she suffered from several types of learning disorders. She also did not remember signing the acknowledgment dated May 31, 2011. She recalled going to the facilities from time to time to sign numerous documents related to her employment, but she did not know why she was required to sign them. She claimed ReadyOne did not explain the documents to her in an orientation session, and she was told by someone from Human Resources "that the documents are for benefits if you get hurt on the job, just sign them" or words to that effect. Lopez also asserted that she was "misled into believing that the documents were not important and were just routine documents that the company needed to complete their paperwork on my employment and so I could receive benefits if I was hurt on the job." Lopez additionally stated that she did not know she was signing an arbitration agreement and she was not told that she was giving up important rights.

12

Citing *Delifingen*, Lopez argues that the trial court could have believed her affidavit and could have concluded that the statements made in that affidavit establish procedural unconscionability. In *Delfingen*, we upheld the trial court's order refusing to compel arbitration because the evidence showed that the plaintiff was illiterate in English, Spanish language versions of the documents in question were not provided to the plaintiff, and according to the plaintiff, a representative of the defendant affirmatively misrepresented the contents of the arbitration agreement. *Delfingen*, 407 S.W.3d at 801-02.

Because these circumstances are not present here, *Delfingen* is distinguishable. Lopez stated that she had a below second grade reading level, but did not aver that she was illiterate. Moreover, we have already determined in our *Delfingen* decision that illiteracy, standing alone, is insufficient to establish that an arbitration agreement is unconscionable. 407 S.W.3d at 801. Lopez also alleged that the documents were never translated for her but ReadyOne furnished her with Spanish-language versions of the MAA and the SPD. There is no evidence that Lopez was mentally incapacitated when she signed the Receipt and Acknowledgment. To prevail on a diminished mental capacity argument, Lopez must still establish that she was incapacitated to the extent that she could not have understood and did not understand what she was signing. Mere inhibition as to comprehension and concentration does not equate to material incapacitation. *In re ReadyOne Industries*, 394 S.W.3d at 687; *In re ReadyOne Industries*, 394 S.W.3d at 696.

We additionally note that it was the employee's unique circumstances in *Delfingen* which allowed her to succeed in preventing arbitration. The employee in *Delfingen* coupled her illiteracy claim with substantial evidence that Delfingen made affirmative misrepresentations to her regarding the arbitration agreement. 407 S.W.3d at 801-03. The evidence also supported a finding that the Delfingen representative affirmatively misrepresented to her the contents of the

13

arbitration agreement that she signed. *Id.* (procedural unconscionability found where company affirmatively misrepresented the contents of English-language arbitration agreement to Spanish-speaking employee, obtained his signature on the English-language agreement based on those misrepresentations, then never provided employee with copy of agreement in either English or Spanish); *see also Lucchese Boot Company v. Licon*, 473 S.W.3d 390, 403 (Tex.App.--El Paso 2015, no pet.); *Lucchese Boot Company v. Rodriguez*, 473 S.W.3d 373, 388-89 (Tex.App.--El Paso 2015, no pet.); *Lucchese Boot Company v. Solano*, 473 S.W.3d 404, 418-19 (Tex.App.--El Paso 2015, no pet.); *ReadyOne Industries, Inc. v. Casillas*, 487 S.W.3d 254 (Tex.App.--El Paso 2015, no pet.). Contrary to Lopez's assertion, there is no evidence ReadyOne affirmatively misrepresented the contents of the documents or she was prevented by trick or artifice from reading the MAA and the Receipt and Acknowledgment. Given the absence of evidence denoting a coercive environment, Lopez is presumed to have read and understood the documents given to her. *Delfingen*, 407 S.W.3d at 802.

In sum, the record does not support the conclusion that Lopez established procedural unconscionability. Consequently, to the extent the trial court denied ReadyOne's motion to compel arbitration on this basis, it erred.

### Other Defenses to Enforcement of the Arbitration Agreement

Lopez raised several other defenses to enforcement of the Arbitration Agreement. First, she alleged that the Arbitration Agreement is unenforceable under Section 406.033(a) of the Texas Labor Code. This statute provides that a non-subscriber negligence cause of action may not be waived by an employee before the employee's injury and any pre-injury agreement by an employee to waive a cause of action is void and unenforceable. TEX.LABOR CODE ANN. § 406.033(e)(West 2015). Section 406.033(a) does not render the Arbitration Agreement void

14

because it is not a pre-injury waiver of her non-subscriber negligence cause of action. *See In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 423 (Tex. 2010); *In re Golden Peanut Co., LLC*, 298 S.W.3d 629, 631 (Tex. 2009). Accordingly, to the extent the trial court denied ReadyOne's motion to compel arbitration on this basis, it erred.

Lopez also asserted that the Arbitration Agreement is unenforceable under Section 171.002 of the Texas Civil Practice and Remedies Code because her attorney did not sign it. This statute provides that Chapter 171 (the Texas General Arbitration Act) does not apply to a claim for personal injury unless the arbitration agreement is signed by each party and each party's attorney. TEX.CIV.PRAC.&REM.CODE ANN. § 171.002(a)(3), (c)(West 2011). Section 2 of the FAA preempts state law that could otherwise render arbitration agreements unenforceable in a contract involving interstate commerce. 9 U.S.C.A. § 2 (West 2009); *Southland Corp. v. Keating*, 465 U.S. 1, 10-11, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). This preemption has been applied to Section 171.002 of the Civil Practice and Remedies Code. *See In re Olshan Foundation Repair Company, LLC*, 328 S.W.3d 883, 890 (Tex. 2010)(holding that the FAA preempts the provisions of Section 171.002 that would otherwise render an arbitration agreement unenforceable). Therefore, to the extent the trial court denied the motion on this basis, it erred in doing so.

Finally, Lopez argued in the trial court that compliance with the FAA violates the Tenth Amendment by interfering with the Workers' Compensation Act. The Texas Supreme Court has decided this contention adversely to Lopez. *See In re Odyssey Healthcare, Inc.*, 310 S.W.3d at 423-24 (holding that the FAA does not violate the Tenth Amendment by encroaching on a state power to enact and regulate its own workers' compensation system). Thus, to the extent the trial court denied the motion on this basis, it erred.

ReadyOne carried its burden of establishing the existence of an agreement to arbitrate the claims raised by Lopez in her suit. Lopez did not establish any valid defenses to enforcement of the Arbitration Agreement. Because the trial court erred by denying ReadyOne's motion to compel arbitration, we sustain Issue One. We reverse and remand the cause to the trial court with instructions to enter an order granting ReadyOne's motion to compel arbitration.

February 8, 2017

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senior Judge), sitting by assignment