

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00087-CV

———————————————

GRANITE CONSTRUCTION COMPANY AND RPM XCONSTRUCTION, LLC,
Appellants

V.

UPPER TRINITY REGIONAL WATER DISTRICT, Appellee

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 24-1612-431

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

This is an interlocutory appeal challenging portions of the trial court's Order on Arbitration-Related Motions. *See* 9 U.S.C. § 16; Tex. Civ. Prac. & Rem. Code §§ 51.016, 171.023, 171.098(a)(1), (2). The case involves multiple disputes between the Upper Trinity Regional Water District (District) as owner, Granite Construction Company (Granite) as general contractor, and RPM xConstruction, LLC (RPM) as Granite's dirt subcontractor related to the construction of the $160 million Leon Hurse Dam project at Lake Ralph Hall. District sued Granite, RPM, and Travelers Casualty and Surety Company (Travelers) in state district court. Granite filed counterclaims against District. RPM moved to compel arbitration and to stay the trial court proceedings, invoking an arbitration clause in the Subcontract between it and Granite (Subcontract). RPM also initiated arbitration proceedings against District and Granite. Granite then filed arbitration demands against both District and RPM even though there was no arbitration provision in the Prime Contract between District and Granite. District opposed arbitration and filed a Motion to Stay Arbitration. Granite supported RPM's Motion to Compel Arbitration and opposed District's Motion to Stay.

On February 10, 2025, after a hearing on these motions had occurred, the trial court issued its "Order on Arbitration-Related Motions" (Order) granting in part and denying in part both RPM's Motion to Compel Arbitration and District's Motion to

Stay Arbitration. The trial court then issued Findings of Fact and Conclusions of Law. Granite and RPM then filed this interlocutory appeal.

## I. Factual Background

The claims involved in the Order were those

a. between District and Granite under the Prime Contract;

b. between Granite and RPM under the Subcontract;

c. between District and RPM (District's claims against RPM under the Subcontract as an alleged third-party beneficiary of the Subcontract that were nonsuited with prejudice after notices of appeal were given); and

d. asserted by RPM against District in Granite's name by virtue of the Subcontract (pass-through claims) (the Subcontract expressly incorporated the Prime Contract by reference and authorized RPM to pursue claims directly against District by and through the Prime Contract in Granite's name).

The portions of the Order being appealed are those denying arbitration of the claims in categories a. and d. and staying the arbitration of those claims.[1]

The Prime Contract between District and Granite, to which RPM was not a signatory, did not contain an arbitration clause. The Subcontract between Granite and RPM, to which District was not a signatory, contained the following arbitration clause:

> 23.0 MANDATORY BINDING ARBITRATION. ALL CLAIMS OR CONTROVERSIES ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE SUBMITTED TO AND RESOLVED BY

---

[1]The trial court ordered arbitration of District's claims against RPM and stayed litigation of those claims, but District has now nonsuited those claims.

3

BINDING ARBITRATION. . . . THE AMERICAN ARBITRATION ASSOCIATION (AAA) SHALL CONDUCT THE ARBITRATION PURSUANT TO AAA'S CONSTRUCTION INDUSTRY ARBITRATION RULES. [CR 1405; APP E]

AAA's Rule R-9(a) provides, in pertinent part, that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." Am. Arb. Ass'n., *Construction Industry Arbitration Rules and Mediation Procedures* 18, (2024), https://www.adr.org/media/kydkdsn1/construction-industry-arbitration-rules-and-mediation-procedures-2024.pdf.

## II. Standard of Review/Applicable Legal Principles

### a. Standard of Review

We review a trial court's order granting or denying a motion to compel arbitration for abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009); *Deaton v. Law Off. of Steven M. Johnson, P.C.*, 697 S.W.3d 676, 692 (Tex. App.—Eastland 2024, no pet.); *ReadyOne Indus., Inc. v. Lopez*, 551 S.W.3d 305, 310 (Tex. App.—El Paso 2018, pet. denied). The same standard applies when considering a trial court's ruling on a motion to stay litigation pending the outcome of arbitration, *Kirby v. Stratus Dominion Anesthesia Assocs., PLLC*, No. 02-24-00463-CV, 2025 WL 1006283, at *2 (Tex. App.—Fort Worth Apr. 3, 2025, pet. dism'd), and when reviewing of a trial court's order granting a motion to stay arbitration. *Victory Cap. Mgmt., Inc. v. Bass*,

4

No. 04-23-00824-CV, 2025 WL 1452050, at *1 (Tex. App.—San Antonio May 21, 2025, no pet.) (mem. op.). Under the abuse of discretion standard, we defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Henry*, 551 S.W.3d at 115. A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Kirby*, 2025 WL 1006283, at *2.

### b. Applicable Legal Principles[2]

A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement. *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014). Whether the claims in a dispute fall within the scope of a valid arbitration agreement is a question of law, which we review de novo. *Henry*, 551 S.W.3d at 115; *Perry Homes v. Cull*, 258 S.W.3d 580, 598 & n.102 (Tex. 2008).

---

[2]RPM's Motion to Compel Arbitration was based on both the Federal Arbitration Act, 9 U.S.C. § 1, et seq. and the Texas Arbitration Act, Tex. Civ. Prac. & Rem. Code § 171.001, et seq. The trial court did not express whether it was ruling specifically on either statute, and the parties have not pointed to any differences in application of the two statutes that would affect this appeal. "When, as here, the parties do not assert that either the state or federal arbitration acts are pivotal, we may rely on cases applying both acts under the assumption that their principles are consonant." *Moncrief v. Moncrief*, 672 S.W.3d 156, 163 (Tex. App.—Fort Worth 2023, pet. denied); *see also Gainey v. Minoo, LLC*, No. 02-19-00171-CV, 2019 WL 6768128, at *7 n.4 (Tex. App.—Fort Worth Dec. 12, 2019, no pet.).

### 1. Does the trial court or the arbitrator decide who is bound to an arbitration agreement?

In the absence of a clear and unmistakable agreement to delegate arbitrability to the arbitrator, the court is responsible for deciding questions of arbitrability, including who is bound by an arbitration agreement. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018). In disputes between signatories to an arbitration agreement, if the parties have clearly and unmistakably contracted to delegate arbitrability disputes to the arbitrator, courts must enforce that agreement just as they must enforce an agreement to delegate resolution of the underlying merits to the arbitrator. *TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694, 702 (Tex. 2023). Generally, an agreement to arbitrate in accordance with AAA rules, or similar rules, constitutes a clear and unmistakable agreement that the arbitrator must decide whether the parties' disputes must be resolved through arbitration. *Id.* at 708. But where a signatory to an arbitration agreement seeks to compel a non-signatory to arbitrate, a question is raised regarding whether an agreement to arbitrate exists between those parties, and the court must decide the issue. *Cerna ex rel. R.W. v. Pearland Urban Air, LLC*, 714 S.W.3d 585, 589 (Tex. 2025); *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015).

### 2. Who besides signatories to the arbitration agreement are bound to it?

Although arbitration is a creature of contract between consenting parties, principles of contract law and agency may require a non-signatory to arbitrate disputes

with signatories. *In re Weekly Homes, L.P.*, 180 S.W.3d 127, 129 (Tex. 2005); *Moncrief*, 672 S.W.3d at 166–67. Texas courts have recognized six circumstances where arbitration with non-signatories may be required: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) direct benefits estoppel, and (6) third-party beneficiary. *Ferguson Braswell Fraser & Kubasta, P.C. v. SAF Oilfield I, LLC*, No. 02-22-00171-CV, 2023 WL 415616, at *6 (Tex. App.—Fort Worth Jan. 26, 2023, no pet.); *Apache Corp. v. Wagner*, 621 S.W.3d 285, 296 (Tex. App.—Fort Worth 2018), *aff'd*, 627 S.W.3d 277 (Tex. 2021); *see also Jody James Farms*, 547 S.W.3d at 633. Under direct benefits estoppel, "a litigant who sues based on a contract subjects him or herself to the contract's terms," including any arbitration clause. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001). As aptly phrased by our supreme court, "a nonparty cannot both have his contract and defeat it too." *Weekley Homes, L.P.*, 180 S.W.3d at 135.

### 3. What is the effect of a binding arbitration agreement where the claims in question fall within the scope of the agreement?

When a valid arbitration agreement exists and its scope covers the dispute between the parties, it is an abuse of discretion for the trial court to enjoin arbitration of the dispute. *Est. of Moncrief*, 699 S.W.3d 315, 330 (Tex. App.—Fort Worth 2024, pet. denied) (op. on reh'g). Further, courts must stay litigation of issues that are subject to arbitration, including claims of non-signatories to the arbitration agreement. *Id.* at 331.

7

### III. Analysis

#### a. RPM's Issues:

1. Whether the trial court erred by deciding the issue of arbitrability as opposed to the arbitrator?

2. Alternatively, whether the trial court erred in deciding that certain claims asserted by and against a non-signatory (District) did not fall within the scope of the subcontract's arbitration agreement where the arbitration agreement is broad, covering all claims and controversies arising out of or related to the subcontract?

3. Whether the trial court erred in finding that a non-signatory (District), who sought the direct benefits under a contract with an arbitration provision, can avoid that arbitration provision—rendering the issues in the Motion to Compel Arbitration and Motion to Stay Arbitration moot—by nonsuiting its claims? (District conceded in its Brief that it is not raising mootness on this question. District Brief at 53.)

#### b. Granite's Issues:

1. The trial court erred in denying RPM's Motion to Compel Arbitration by ruling District–Granite claims are non-arbitrable.

2. The trial court erred in denying RPM's Motion to Compel Arbitration by limiting direct benefits estoppel to District–RPM Claims.

3. The trial court erred in rejecting Granite's Proposed Findings.

#### c. RPM Issue 1

"A party seeking to compel arbitration must establish that '(1) there is a valid arbitration clause, and (2) the claims in dispute fall within that agreement's scope.' *Courts decide the first inquiry—whether an agreement to arbitrate exists.*" *Cerna*, 714 S.W.3d at 588 (emphasis added). Here, District contends it has no agreement to arbitrate because it is not a signatory to the Subcontract and the Prime Contract with Granite

8

has no arbitration provision. Because this is a question of the existence of an agreement to arbitrate, it is the court's responsibility to decide. *Id.*

It is uncontested that there is a valid arbitration agreement in the Subcontract between Granite and RPM that requires that "all claims or controversies arising out of or *related to this agreement* shall be submitted to and resolved by binding arbitration" conducted by the AAA using its construction industry arbitration rules. [Emphasis added.] As noted above, the AAA Construction Industry Arbitration Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." Am. Arb. Ass'n., *Construction Industry Arbitration Rules and Mediation Procedures*, 18, (2024), https://www.adr.org/media/kydkdsn1/construction-industry-arbitration-rules-and-mediation-procedures-2024.pdf.

RPM contends that the Subcontract language adopting the AAA as arbitrator and adopting the AAA rules, which allow the arbitrator to rule on his or her own jurisdiction, delegates the arbitrability disputes to the arbitrator, not the court. RPM relies on *TotalEnergies*, 667 S.W.3d at 709, 720, a case involving a dispute between signatories to contracts. RPM further argues that District, by suing RPM on claims that are based on the Subcontract, has subjected itself to the doctrine of direct benefits estoppel, thereby subjecting itself to the terms of the arbitration provision in the Subcontract. *See Lennar Homes of Tex. Land and Constr., Ltd. v. Whiteley*, 672 S.W.3d 367, 376–77 (Tex. 2023); *FirstMerit Bank*, 52 S.W.3d at 755.

9

In *Jody James Farms* the court directly rejected RPM's arguments about who decides the question of whether there is an agreement to arbitrate in non-signatory claims. 547 S.W.3d at 631–32. The court expressly held that

> [w]hether parties have agreed to arbitrate is a gateway matter ordinarily committed to the trial court and controlled by state law governing "the validity, revocability, and enforceability of contracts generally." Parties can, however, agree to arbitrate arbitrability. Arbitration is a matter of contract, and that which the parties agree must be arbitrated shall be arbitrated. *A presumption favors adjudication of arbitrability by the courts absent clear and unmistakable evidence of the parties' intent to submit that matter to arbitration.*

*Id.* at 631 (emphasis added) (citation omitted).

In this pre-*TotalEnergies* case, the court then held that

> [w]hile such deference [to the arbitrator] may be the consequence of incorporating the AAA rules in disputes *between signatories* to an arbitration agreement, which we need not decide, *the analysis is necessarily different when a dispute arises between a party to the arbitration agreement and a non-signatory. . . . We hold it [deference to the arbitrator] does not.* Even when the party resisting arbitration is a signatory to an arbitration agreement, questions related to the existence of an arbitration agreement with a non-signatory are for the court, not the arbitrator. . . . *A contract that is silent on a matter cannot speak to that matter with unmistakable clarity, so an agreement silent about arbitrating claims against non-signatories does not unmistakably mandate arbitration of arbitrability in such cases.*

*Id.* at 631–32 (emphasis added).

Although the decision in *Jody James Farms* involved a contract that did not effectively delegate arbitrability to the arbitrator, the duty of the court to decide the issue of the existence of an agreement to arbitrate was reaffirmed in *Cerna*, a case involving an arbitration agreement with a delegation-of-arbitrability clause similar to

10

that found in *TotalEnergies* and in this case. 714 S.W.3d at 589 (holding that the court must decide whether there is an arbitration agreement between the signatory seeking to compel arbitration and the non-signatory).[3]

Following these authorities as we must, we hold that it was the responsibility of the trial court to rule on the existence of an agreement to arbitrate between District (non-signatory) and Granite and RPM (signatories), not the arbitrator. *See Apache Corp.*, 621 S.W.3d at 295–96.

### d. Granite's Issues 1 & 2/RPM's Issue 2

Having determined that it was the trial court's responsibility to decide whether there is a binding arbitration agreement between District and RPM and Granite, we now examine whether the trial court abused its discretion in the contested rulings. We will begin with whether District, as a non-signatory to the Subcontract, was bound to arbitration under the Subcontract's arbitration provision. *See id.* As noted above, Texas recognizes six situations where non-signatories may be forced to arbitrate with signatories. Our analysis begins and ends with direct benefits estoppel.

District sued RPM, in part, claiming to be a third-party beneficiary of the Subcontract between RPM and Granite and that RPM had breached that Subcontract, resulting in damages to District. District also alleged that RPM owed it duties under

---

[3]*See also Coinbase, Inc. v. Suski*, 602 U.S. 143, 150, 144 U.S. 1186, 1193 (2024) (under the FAA, where there is a question of whether one contract with no arbitration clause or another contract with an arbitration clause and a delegation of arbitrability clause governs, it is for the court to decide which contract governs.).

the Subcontract and that it was negligent in performing those duties resulting in damages to District.

Under the doctrine of direct benefits estoppel, a non-signatory who seeks the benefits of a contract, or who seeks to enforce the terms of a contract, is estopped from simultaneously attempting to avoid the contract's burdens, including the obligation to arbitrate disputes. *Rachal v. Reitz*, 403 S.W.3d 840, 846 (Tex. 2013). A non-signatory who uses the litigation process to sue based on a contract subjects him or herself to the contract's terms. *Taylor Morrison of Tex., Inc. v. Skufca ex rel. KSX*, 660 S.W.3d 525, 526 (Tex. 2023); *FirstMerit Bank*, 52 S.W.3d at 755. "When 'the alleged liability arises from the contract or must be determined by reference to it . . . [,] equity prevents [the non-signatory plaintiff] from avoiding [an] arbitration clause that was part of that [contract].'" *Lennar Homes*, 672 S.W.3d at 377 (quoting *Jody James Farms*, 547 S.W.3d at 637); *Ferguson*, 2023 WL 415616, at *6; *Moncrief*, 672 S.W.3d at 166.

District's claims against RPM clearly were based on allegations of RPM's duties under the Subcontract giving rise to a negligence claim. The same is true for the third-party beneficiary claim, which expressly seeks recovery for damages from RPM's breach of the Subcontract. We hold that the District subjected itself to the terms of the Subcontract under the doctrine of direct benefits estoppel, including the arbitration provision. *Lennar Homes*, 672 S.W.3d at 376–77.

Having determined that there is a valid arbitration agreement to which District has subjected itself by virtue of direct benefits estoppel, we must determine if the claims for which arbitration is sought fall within the scope of the arbitration agreement. "The law imposes a presumption in favor of arbitrability [that] requires, whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, that the court decide the question of interpretation in favor of arbitration." *Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 230 (Tex. App.—Houston [14th Dist.] 1993, writ denied). "The presumption of arbitrability is particularly applicable where the clause is broad," such as when it "provides for arbitration of 'any dispute arising between the parties,' or '*any controversy or claim arising out of or relating to the contract thereof,*' or 'any controversy concerning the interpretation, performance[,] or application of the contract.'" *Id.* (emphasis added) (citation omitted). "In such instances, absent any express provision excluding a particular grievance from arbitration, only the most forceful evidence of purpose to exclude the claim from arbitration can prevail." *Id.*; *see also Cedillo v. Immobiliere Jeuness Establissement*, 476 S.W.3d 557, 567–68 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

This policy favoring arbitration is so compelling that a court should not deny arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (orig. proceeding) (internal quotation marks and emphasis omitted). The burden is on the party opposing

13

arbitration to show that the claims fall outside the scope of the arbitration agreement. *Id.* at 899–900.

Obviously, all of the claims between RPM and District (excluding the Granite pass-through claims) fall within the scope of this agreement, and no one contests otherwise. The question is whether the Granite pass-through claims and the District–Granite claims do, too. As our Supreme Court has noted, "the boundaries of direct-benefits estoppel are not always clear." *Lennar Homes of Tex.*, 672 S.W.3d at 377. District contends that it only had a contract with Granite, which did not have an arbitration provision, so these claims should not be subject to the Subcontract's arbitration clause. While that may have been true before District filed suit, District bound itself to the Subcontract, including its arbitration clause, when it voluntarily and affirmatively sought to recover damages from RPM based on the Subcontract. Under this circumstance, District is subject to the Subcontract arbitration provision. *See Ferguson Braswell Fraser & Kubasta, P.C.*, 2023 WL 415616, at *6–7 (applying direct benefits estoppel in holding that non-signatory client suing lawyer for legal malpractice based on engagement contract between lawyer's law firm and client, which included an arbitration clause, bound client to arbitrate with lawyer, law firm, and other parties involved in transaction); *Greenberg Traurig, LLP v. Nat'l Am. Ins. Co.*, 448 S.W.3d 115, 121–22 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (same).

Finally, the Subcontract's arbitration clause provides that "all claims or controversies arising out of or *related to this agreement* shall be submitted to and resolved

14

by binding arbitration." [Emphasis added.] As noted above, this is a broad arbitration clause. When considering the scope of a broad arbitration clause, "an allegation is within the scope of the arbitration provision if the allegation is covered by, has a significant relationship to, is inextricably enmeshed with, or is factually intertwined with the contract that contains the arbitration agreement." *Glassell Producing Co. v. Jared Resources, Ltd.*, 422 S.W.3d 68, 78 (Tex. App.—Texarkana 2014, no pet.); *see also Spawglass Civil Constr. Inc., v. Hanover Ins. Co.*, No. 01-23-00829-CV, 2024 WL 3503078, at *13 (Tex. App.—Houston July 23, 2024, pet. dism'd). "When determining whether claims fall within the scope of the arbitration agreement, we look to the factual allegations, not the legal claims." *Rachal*, 403 S.W.3d at 850; *see also FirstMerit Bank*, 52 S.W.3d at 754. The scope of an arbitration clause is determined based on the "complaint's factual allegations rather than the legal causes of action asserted." *FirstMerit Bank*, 52 S.W.3d at 754; *see also Rachal*, 403 S.W.3d at 850. The determination is made based on the substance of the claim, not artful pleading. *Weekley Homes*, 180 S.W.3d at 131–32.

Here, these tests are clearly met. Regarding Granite, District pled that:

a.     it had contracted with Granite to perform construction work on the Lake Ralph Hall Leon Hurse Dam Project, which included construction of a large dam, an embankment, a spillway structure, and other miscellaneous improvements for the dam and spillway;

b.     Granite's Prime Contract with District required Granite's subcontracts to bind the subcontractors to the applicable terms and conditions of Granite's Prime Contract with District "for the benefit of the District";

c. Granite executed the Subcontract with RPM as the primary earthwork embankment subcontractor to move dirt and soil to construct the embankment of the dam, and RPM's Subcontract incorporated Granite's Prime Contract into the Subcontract. RPM's Subcontract further provided that RPM assumed toward Granite and District all the obligations and responsibilities that Granite, by the Prime Contract, assumed toward District;

d. Granite was running way behind its completion schedule and would likely fail to meet its completion date. Granite was wholly failing to achieve the soil placement production rates necessary to complete the dam embankment necessary to impound water by the date mandated by Granite's Prime Contract. Granite was further failing to place sufficient amounts of roller compacted concrete and reinforced concrete necessary to complete the dam service spillway structure by the date mandated by Granite's Prime Contract;

e. District had requested, but Granite had failed to provide a contractually mandated recovery plan for timely completion of the work; and

f. Granite had failed to properly man the Project with a sufficient number of personnel and/or qualified personnel and/or properly prosecute its work on the project.

Based on these factual allegations, District pled that Granite breached its contract with District by:

(1) failing to perform its Contract Work promptly; and/or

(2) failing to perform the Contract Work in the fashion necessary to complete the Project within the time required by the [c]ontract; and/or

(3) failing to provide a Recovery Plan to [District] as . . . required . . . by the [c]ontract after a request by the [District]; and/or

(4) failing to provide a sufficient number of workers to properly prosecute the Contract Work; and/or

(5)     failing to provide workers with sufficient skills and experience to complete its Contract Work on the Project within the time and to the standards required by its [c]ontract; and/or

(6)     failing to perform the Contract Work to the quality and standards required by its [c]ontract.

District then asserted its allegations, as a "third party beneficiary" of the Subcontract, that RPM had failed to meet its responsibilities to Granite under the Subcontract. Specifically, RPM had:

(1)     fail[ed] to perform its Subcontract Work promptly and diligently, specifically by failing to maintain earthwork production at a minimum level of 15,000 cubic yards of completed embankment per shift, excluding weather impacts; and/or

(2)     fail[ed] to perform the Subcontract Work in the fashion necessary to complete the Project within the time required by the [c]ontract; and/or

(3)     fail[ed] to provide a sufficient number of workers to properly prosecute the Contract Work; and/or

(4)     fail[ed] to provide workers with sufficient skills and experience to complete its Contract Work on the Project within the time and to the standards required by its [c]ontract; and/or

(5)     fail[ed] to perform the Contract Work to the quality and standards required by its [c]ontract.

From the District's allegations, it is clear that the crux of its case is that Granite and RPM had intermingled contractual obligations to it to build the dam, embankment, and spillway on this project, which included moving large volumes of dirt; that Granite and RPM had fallen behind in their contractual obligations and would not be able to catch up with their obligations in a timely fashion; and that such

17

had caused damages to District. The allegations regarding the District–Granite claims and the Granite pass-through claims clearly have "a significant relationship to, [are] inextricably enmeshed with, or [are] factually intertwined with the contract that contains the arbitration agreement." *Glassell Producing Co.*, 422 S.W.3d at 78.

We overrule RPM's Issue One and sustain Granite's Issue Two and RPM's Issue Two.

## IV.    Conclusion

Having sustained Granite's and RPM's dispositive second issues, we: (1) reverse the judgment of the trial court denying arbitration of claims and counterclaims between District and Granite (including the Granite pass-through claims asserted by RPM against District), and we remand the case to the trial court with directions to refer these claims and counterclaims to arbitration; (2) reverse the judgment of the trial court staying the arbitrations referenced in its Order on Arbitration-Related Motions dated February 10, 2025; and (3) direct the trial court to stay all proceedings in the trial court that are the subject of arbitration pending resolution of the arbitrations.[4] Having sustained both Appellants' Second Issues, we need not consider the remaining issues. *See* Tex. R. App. P. 47.1.

---

[4]The non-suit with prejudice of District's claims against RPM under the Subcontract was not before the trial court when it signed its Order on Arbitration-Related Motions, so we do not consider it for purposes of this appeal. *Fidelity Auto Grp., LLC v. Hargroder*, 689 S.W.3d 1, 10 (Tex. App.—Beaumont 2024, no pet.).

18

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  May 14, 2026