

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00280-CV

———————————————————

IN RE INTELLICENTRICS, INC.

Original Proceeding
Trial Court No. 18-2879-362

Before Sudderth, C.J.; Meier and Kerr, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

## I. Introduction

In two issues in its petition for writ of mandamus, Relator IntelliCentrics, Inc. complains that the trial court abused its discretion when it ordered IntelliCentrics to respond to discovery requests during a proceeding on a motion to dismiss under the Texas Citizens Participation Act (TCPA), which it contends were not "specified and limited" or "relevant to the motion [to dismiss]," as required by the statute, *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(b) (West 2015), and that its appellate remedy is inadequate. IntelliCentrics asks us to vacate the trial court's August 22, 2018 discovery order "as it relates to Request Nos. 3–7." We deny the petition.

## II. Background

In December 2016, when Real Party in Interest Dean McCaskill was 58 years old, IntelliCentrics hired him away from his previous employer to be its Executive Vice President for North America. He and his wife relocated from Georgia to Texas. According to McCaskill, 17 days after he reported to work on January 3, 2017, his role as the Executive Vice President for North America was given to a significantly younger employee, and McCaskill was informed that he would instead have a materially different position.

Four months later, McCaskill was terminated. He filed an age discrimination complaint against IntelliCentrics with the Texas Workforce Commission (TWC), and after receiving his right-to-sue notice from TWC, McCaskill sued the company,

alleging breach of contract, promissory estoppel, fraudulent inducement, and age discrimination.

IntelliCentrics filed a TCPA motion to dismiss all of McCaskill's claims on June 4, 2018. A little over two weeks later, McCaskill filed a motion for expedited discovery regarding the TCPA motion, propounding eleven requests for production. *See id.* IntelliCentrics opposed the motion.

As pertinent here, with regard to Requests 3–5, IntelliCentrics complained that the requested items were neither "specified and limited" nor relevant to the TCPA motion because McCaskill sought over three years of documents, including proprietary and private compensation information of other IntelliCentrics employees. *See id.* With regard to Requests 6–7, IntelliCentrics complained that the requested items were not "limited" in that McCaskill demanded almost ten years of documents about accounts and all information regarding potential sales to a customer. *See id.* McCaskill disagrees with this characterization of his requests.

On August 22, 2018, the trial court granted McCaskill's motion, ordered IntelliCentrics to respond to and produce documents that McCaskill had requested in his expedited discovery request, and ordered IntelliCentrics to do so on or before September 7, 2018.[1]

---

[1]The trial court also reset the TCPA motion hearing from August 30, 2018, to September 21, 2018.

3

On September 7, 2018, IntelliCentrics produced its responses to Requests 1–2 and 8–11 and filed its petition for writ of mandamus with regard to the remaining requests. McCaskill then filed an emergency motion to stay the trial court proceedings during the pendency of the original proceeding, and we granted the stay on September 17, 2018. After IntelliCentrics filed a motion for clarification, we clarified that our stay order covered all trial court proceedings, including the TCPA deadlines, until further order of this court.

### III. Discussion

IntelliCentrics argues that it does not have an adequate remedy by appeal because complying with the trial court's discovery order would require an overly burdensome production of irrelevant documents and that the trial court abused its discretion because it disregarded the statutory discovery limitations imposed by the TCPA. McCaskill responds that IntelliCentrics has failed to show any evidence of undue burden, that it has mischaracterized the time periods of the requests as necessitating the production of voluminous and duplicative documents, and that the trial court had good cause to order the documents supporting his prima facie case for fraudulent inducement. IntelliCentrics counters that McCaskill's response fails to apply the correct standards of discovery under the TCPA and improperly attempts to shift the burden from himself.

## A. Standard of Review

Generally, the scope of discovery is within the trial court's discretion, *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding), and mandamus relief is appropriate only if a trial court abuses its discretion, and "there is no adequate remedy on appeal." *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 887 (Tex. 2010) (orig. proceeding). The supreme court has instructed us that the burden of establishing an abuse of discretion and no adequate remedy on appeal "is on the party resisting discovery, and this burden is a heavy one." *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding). A clear abuse of discretion occurs when a trial court's action is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* (citing *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex. 1996) (orig. proceeding)).

When determining whether the trial court abused its discretion, we are mindful that the purpose of discovery is to seek the truth so that disputes may be decided by what the facts reveal, not by what facts are concealed. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding). Generally speaking, the rules governing discovery do not require as a prerequisite to discovery that the information sought be admissible; it is enough that the information appears reasonably calculated to lead to the discovery of admissible evidence. *See* Tex. R. Civ. P. 192.3(a). But this broad grant is limited by the legitimate interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information. *In re Am. Optical*

5

*Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding); *see also* Tex. R. Civ. P. 192.4 ("Limitations on Scope of Discovery"). It may also be limited by statute, such as the TCPA, which permits only "specified and limited discovery relevant to the motion [to dismiss]." Tex. Civ. Prac. & Rem. Code Ann. § 27.006(b). And a clear abuse of discretion occurs when the trial court orders discovery exceeding that which is permitted by the rules. *See CSX Corp.*, 124 S.W.3d at 152 (explaining that an abuse of discretion occurs when the discovery ordered "exceeds that permitted by the rules of procedure").

Because appellate courts should not intervene to control incidental trial court rulings when an adequate remedy by appeal exists, *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding), we must consider whether the benefits of mandamus review outweigh the detriments when determining whether appeal is an adequate remedy. *In re BP Prods. N. Am., Inc.*, 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding). An appeal is inadequate when a party is in danger of losing substantial rights, such as (1) when the appellate court would not be able to cure the trial court's discovery error; (2) when the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error; or (3) when the trial court disallows discovery and the missing discovery cannot be made a part of the appellate record or the trial court, after proper request, refuses to make it part of the record. *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 210–11 (Tex. 2004) (orig. proceeding). An appeal is also inadequate in those "exceptional

6

cases" when an ordinary appeal would deprive a party of the ability to "preserve important substantive and procedural rights from impairment or loss." *Prudential Ins. Co. of Am.*, 148 S.W.3d at 136, 138 (holding that the right to waive a jury trial would "be lost forever" by requiring a party to submit to a jury trial and wait to complain of the resulting judgment through ordinary appeal).

## B. TCPA Discovery

The TCPA serves a dual purpose. On the one hand, the statute is designed to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law. Tex. Civ. Prac. & Rem. Code Ann. § 27.002 (West 2015). Balanced against those rights, the statute also seeks to protect the rights of persons to file meritorious lawsuits for demonstrable injury. *Id.*; *see D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 433–34 (Tex. 2017) (holding that the TCPA seeks to balance the tension between protecting First Amendment freedoms and preserving the rights of individuals to file meritorious lawsuits).

The primary apparatus in achieving this balance is found in civil practice and remedies code section 27.003, which provides that a party may file a motion to dismiss the legal action if such action "is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a) (West 2015). Ordinarily, once such a motion has been filed, all discovery is stayed. *Id.* § 27.003(c). However, the

7

respondent may, upon a showing of good cause, be entitled to a court order allowing it to conduct "specified and limited discovery relevant to the motion." *Id.* § 27.006(b). After such specified and limited discovery has been conducted—and no later than 120 days after service of the motion to dismiss—the dismissal hearing must occur. *Id.* § 27.004(c) (West 2015). At that hearing, the movant must first show that it is entitled to bring the motion to dismiss, and then if successful, the burden shifts from the movant to the respondent to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question," or face dismissal of the claim or claims in question. *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b), (c) (West 2015).

This statutorily mandated procedure becomes problematic in circumstances where a movant's entitlement to bring a motion to dismiss under section 27.002 is dubious, i.e., when the plaintiff's legal action is arguably **not** based on, related to, or in response to movant's right of free speech, right to petition, or right of association. When a movant is not entitled to file a TCPA motion to dismiss but nevertheless files one, the respondent has no statutory mechanism to challenge the filing at the outset. Instead, under the statutory scheme, the respondent must wait until specified and limited discovery, if any, is completed and challenge the motion at the time the hearing on the motion occurs.[2]

---

[2]We find no authority either permitting or prohibiting a challenge to a TCPA motion to dismiss by filing an exception in response to the motion. *Cf. McConnell v.*

8

The problem this creates is exacerbated in complex cases involving numerous legal actions where the movant uses a shotgun approach, taking aim at all of the legal actions, not just the actions that are actually based on free speech, petition, or association rights. In such cases, prior to receiving a threshold determination of whether the movant was entitled to bring the motion to dismiss as to certain claims in the first place, the plaintiff must nevertheless be armed with "clear and specific" evidence of each essential element of every single claim challenged. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Thus, under these circumstances, discovery must be sufficiently broad to cover all essential elements of all of the challenged claims, even if it could be later determined that some of the claims did not fall within the TCPA.

Here, IntelliCentrics challenged all four of McCaskill's causes of action—breach of contract, promissory estoppel, fraudulent inducement, and age discrimination. With regard to the breach of contract and promissory estoppel claims, IntelliCentrics argues that its alleged agreement and verbal promise to pay McCaskill a salary, benefits, bonuses, and stock options constituted "protected communications within the meaning of the TCPA" because these statements involved the "economic well-being" of IntelliCentrics, were related to "products or services in the marketplace," and occurred among individuals who "joined together to collectively express, promote, pursue, or defend common interests." *See id.* § 27.001(2) (West

*Southside ISD*, 858 S.W.2d 337, 342 (Tex. 1993) (holding, in summary judgment context, that an exception should be filed when a nonmovant wishes "to complain on appeal that the grounds relied on by the movant were unclear or ambiguous").

9

2015) (defining "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests"), § 27.001(3), (7)(B) (defining the "exercise of the right of free speech" to include a communication made in connection with an issue of "economic[] or community well-being"), § 27.001(3), (7)(E) (defining the "exercise of the right of free speech" to include a communication made in connection with an issue related to "a good, product, or service in the marketplace").

Although, on the surface, IntelliCentrics's argument appears persuasive, and the supreme court has recognized the "wide net" that the TCPA casts, *see Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1)), the reach of the statute must have its limits. After all, what breach of contract action would not find its genesis in communication between the parties? And to be actionable, how would such communication not also touch upon the economic well-being of the parties?

We see a distinction between communications used as evidence to support a claim for breach of contract and a claim that is "based upon, relate[d] to, or []in response to" that communication under the TCPA. *See Beving v. Beadles*, No. 02-17-00223-CV, 2018 WL 5074765, *7 (Tex. App.—Fort Worth Oct. 18, 2018, no pet. h.). Given that distinction, at first blush, IntelliCentrics's arguments may seem a stretch. But if it is a stretch, then under the procedural structure of this statute, it is one that creates a double-edged sword. Assuming McCaskill met his burden of showing good

10

cause, discovery ordered by the trial court under section 27.006(b), albeit restricted to a specified and limited amount, should also be sufficiently broad to uncover evidence of all essential elements of the challenged breach of contract and promissory estoppel claims.

Similarly, with regard to the fraudulent inducement claim, IntelliCentrics argues that its alleged misrepresentations about job title, work responsibilities, expected sales targets, commission-based performance incentives, bonus payments, reimbursement for moving expenses, and business prospects, as well as subsequent alleged statements regarding product unavailability, constituted "protected communications within the meaning of the TCPA," again because such alleged misrepresentations involved the "economic well-being" of IntelliCentrics, were related to "products or services in the marketplace," and occurred among individuals who "joined together to collectively express, promote, pursue, or defend common interests." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(2) (defining "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests"), § 27.001(3), (7)(B) (defining the "exercise of the right of free speech" to include a communication made in connection with an issue of "economic[] or community well-being"), § 27.001(3), (7)(E) (defining the "exercise of the right of free speech" to include a communication made in connection with an issue related to "a good, product, or service in the marketplace"). And as we stated regarding the breach of contract and promissory estoppel claims,

11

assuming McCaskill met his burden of showing good cause, discovery ordered by the trial court, albeit restricted to a specified and limited amount, should have been sufficiently broad to uncover evidence of all essential elements of the fraudulent inducement claim.

IntelliCentrics also argues that because McCaskill attributed "'various comments' about McCaskill's age and whether he would be able to work for the next ten years" to IntelliCentrics and recited these comments as evidence of age discrimination in his original petition, these alleged statements transform an age discrimination claim into a claim "'based on, relate[d] to[,] or . . . in response to' protected communications within the meaning of the TCPA." Despite the failure to specifically articulate a theory that would place such comments within the TCPA's ambit, IntelliCentrics nevertheless claims that McCaskill's age discrimination action is subject to dismissal under the TCPA as well. Once more, having challenged this cause of action under the TCPA, if good cause was shown to obtain discovery, IntelliCentrics cannot now complain of any specified and limited age-discrimination discovery ordered under section 27.006(b).

According to IntelliCentrics, after McCaskill moved for discovery under section 27.006(b), a visiting judge held a hearing and ruled on the motion. But although IntelliCentrics attached a copy of the resulting discovery order to its petition for writ of mandamus, it did not include a reporter's record from the hearing. Accordingly, we presume that McCaskill satisfied the statutory showing of good cause. *See id.*

§ 27.006(b) (stating that on motion by a party and "on a showing of good cause," the court may allow specified and limited discovery relevant to the motion"); Tex. R. App. P. 52.3(k)(2) (stating that the relator's mandamus appendix may contain any other item pertinent to the issues or points presented for review), 52.7(a)(2) (requiring relator to file with the petition a properly authenticated transcript of any relevant testimony from any underlying proceeding, including any exhibits offered in evidence, "or a statement that no testimony was adduced in connection with the matter complained");[3] *Walker v. Packer*, 827 S.W.2d 833, 837 (Tex. 1992) (orig. proceeding) (stating that relator, as the party seeking relief, has the burden of providing the court with a sufficient record to establish its right to mandamus relief); *see also In re Allied Chem. Corp.*, 227 S.W.3d 652, 654, 658 (Tex. 2007) (orig. proceeding) (observing that trial courts have broad, although not unlimited, discretion in scheduling discovery and that mandamus has been granted when the denial of discovery "goes to the heart of a party's case"). Thus, we are limited in our review to the question of whether the discovery ordered was sufficiently "specified and limited" to pass statutory muster.

In its order, the trial court directed IntelliCentrics to "respond to and produce the documents requested by *[McCaskill's] Request for Production of Documents Relevant to*

_____

[3]In the unsworn declaration attached to IntelliCentrics's petition for writ of mandamus, IntelliCentrics's counsel stated that he had reviewed the petition and "concluded that every factual statement therein is supported by competent evidence included in the Appendix *or record*." [Emphasis added.] However, no mandamus record was filed in this court. IntelliCentrics's counsel did not include a statement that no testimony was adduced in connection with this matter.

*Motion to Dismiss and Prima Facie Case.*"  Of the eleven requests for production that McCaskill propounded, IntelliCentrics takes issue with five, specifically, Requests for Production 3–7.  In presenting its argument, IntelliCentrics divides these Requests into two groups—Requests 3–5 and Requests 6–7.  For purposes of our discussion and analysis, we will organize them in similar fashion.

1.  **Requests 3–5:**

   **REQUEST NO. 3:**  Documents reflecting the material terms of any commission-based or other performance incentives that applied to Defendant's executive staff (including, but not limited to, vice presidents and above) at any time from January 1, 2014, through April 7, 2017.

   **REQUEST NO. 4:**  Documents reflecting the amounts of commission-based or other performance incentives paid to Defendant's executive staff (including, but not limited to, vice presidents and above) earned in or attributable to any period of time from January 1, 2014, through April 7, 2017.

   **REQUEST NO. 5:**  Communications to or from Michael Sheehan reflecting the amounts of commission-based or other performance incentives paid to Defendant's executive staff (including, but not limited to, vice presidents and above) earned in or attributable to any period of time from January 1, 2014, through April 7, 2017.

Relying on our sister court's opinion in *In re SPEX Group US LLC*, IntelliCentrics argues that because Requests 3–5 seek more than three years of documents and include the terms of and communications about any type of commission-based performance incentives for IntelliCentrics's executives, the scope exceeds what is necessary to meet the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true."  No. 05-18-00208-CV,

14

2018 WL 1312407, at *4 (Tex. App.—Dallas Mar. 14, 2018, orig. proceeding [mand. dism'd]) (mem. op.) (citing *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding)).[4]

McCaskill argues that Requests 3–5 are specified and limited to obtaining evidence to support his prima facie case for fraudulent inducement and that they do not seek "all" or "each and every" document but rather could be satisfied "with a minimal number of documents" containing the information sought. *See* Tex. R. Civ. P. 193 cmt. 2 ("A party who objects to production of documents from a remote time period should produce documents from a more recent period unless that production would be burdensome and duplicative should the objection be overruled."). As to the relevant time periods, McCaskill points out that as proof of his fraud claim, he believes the evidence would show that IntelliCentrics knew that its promised performance incentives were not reasonably obtainable and were inaccurate because

---

[4]The facts in *SPEX* are distinguishable from the facts here. As McCaskill points out, the discovery in *SPEX* sought "virtually every document in SPEX's possession related to its business," seeking:

> [A]ll correspondence between the SPEX parties or any third parties "referencing or mentioning the License Agreement or SPEX Ltd.'s obligations under the License Agreement," and documents evidencing SPEX's engineering, development, or creation of SPEX products, SPEX's marketing of SPEX products, and SPEX's use of SPEX products.

2018 WL 1312407, at *5. We do not take issue with the principle of law as set forth by our sister court, but the scope of discovery sought here does not compare to that sought in *SPEX*. *See id.*

15

they "grossly exceeded what the company had proved capable of obtaining over the prior ten years." And because fraud "is not susceptible to direct proof," McCaskill argues that this cause of action must be proven through circumstantial evidence, which these discovery requests were designed to obtain. *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986); *Hand v. Hughey*, No. 02-15-00239-CV, 2016 WL 1470188, at *4 (Tex. App.—Fort Worth Apr. 14, 2016, no pet.) (mem. op.) (referencing *Andrews Cty. v. Sierra Club*, 463 S.W.3d 867, 867 (Tex. 2015), to explain that the clear and specific standard does not prohibit the use of circumstantial evidence to meet plaintiff's burden under the TCPA).

In sum, McCaskill argues that Requests 3–5 were not overbroad and were specifically tailored to meet his burden under the TCPA "because evidence of whether other executives had achieved their on-target performance incentives [in the past] is indicative of whether achieving the target set for McCaskill was a reasonable possibility" in the future. We agree and hold that the trial court's order as to these requests was not so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. Thus, the trial court did not clearly abuse its discretion by ordering the specified and limited discovery sought in Requests 3–5. We overrule this portion of IntelliCentrics's second issue.

## 2. Requests 6–7:

**REQUEST NO. 6:** Documents reflecting the number of new accounts obtained by Defendant from January 1, 2007, through December 31, 2016.

16

**REQUEST NO. 7:** Communications to or from Michael Sheehan reflecting the number of new accounts obtained by Defendant from January 1, 2007, through December 31, 2016.

IntelliCentrics raises the same objections to the remaining two requests, plus the additional objection that the discovery sought was irrelevant to the TCPA motion because McCaskill failed to allege that IntelliCentrics made any misrepresentations to him about whether bonuses were paid to other employees in previous years or as to new accounts. In sum, IntelliCentrics argues that none of the requested documents would assist McCaskill in proving that IntelliCentrics "made some misrepresentation or that it never intended to pay a commission even if he achieved the metrics."

McCaskill responds that Requests 6 and 7 are also relevant to his fraudulent inducement claim. According to McCaskill, "Sheehan told McCaskill that he and his team were expected to achieve over 5,000 new accounts in 2017." Thus, obtaining discovery as to whether that number had ever historically been achieved would be "relevant to whether [Sheehan's] representations to McCaskill about his target incentive were either false when made, made with an intent to deceive, or made without knowledge of their truth," and thus relevant to the elements that McCaskill must prove to present clear and specific evidence of a prima facie case for fraudulent inducement. Again, we agree and hold that the trial court's order was not so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. Thus, the trial court did not clearly abuse its discretion by ordering the specified and limited

discovery sought in Requests 6–7. We overrule the remainder of IntelliCentrics's second issue.

## IV. Conclusion

Having overruled IntelliCentrics's second issue, we deny the requested relief without reaching its first issue on the adequacy of any appellate remedy, *see* Tex. R. App. P. 47.1, and lift our September 17, 2018 stay.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: October 25, 2018